**In re PARR MEADOWS RACING ASSOCIATION, INC., Petitioner in Bankruptcy.**

**In re Ronald J. PARR, Petitioner in Bankruptcy.**

**No. CV 87–2657.**

United States District Court,
E.D. New York.

Oct. 14, 1988.

E. Thomas Boyle, Suffolk County Atty. by Patrick J. Barton, Hauppauge, N.Y., for appellant Suffolk County Treasurer.

Kramer, Levin, Nessen, Kamin & Frankel by Harold P. Weinberger, New York City, for appellee Lincoln Sav. Bank.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an appeal from an order of the bankruptcy court (J. Hall), which granted Suffolk County priority over secured creditors with respect to pre-petition real property taxes and denied the County priority with respect to its claim for post-petition real property taxes, interest, and penalties.

## I. BACKGROUND

On October 17, 1977, the debtor, Parr Meadows Racing Association ("Parr Meadows") filed for relief in bankruptcy court, seeking to reorganize pursuant to Chapter 11 of the Bankruptcy Code ("Code"). On June 12, 1979, the petition was dismissed, and Ronald J. Parr, Chairman of Parr Meadows, filed for Chapter 11 relief and was authorized to conduct his affairs as debtor-in-possession. Two days after this filing, Parr caused to be conveyed to himself Parr Meadows' only asset, a race track located in Suffolk County, New York.

By order dated August 15, 1978, the bankruptcy court lifted the automatic stay to permit Flushing Savings Bank, Parr Meadows' principal secured creditor at that time, to seek a declaratory judgment that the property was fraudulently conveyed. On April 27, 1981, the Appellate Division for the Second Department, reversing the lower court, held that Parr transferred the property with intent to hinder and delay creditors.

In the meantime, on October 4, 1979, Parr Meadows filed a second bankruptcy petition pursuant to Chapter 11. On April 7, 1980, the reorganization petition was converted to a Chapter 7 liquidation case and Parr was adjudicated a bankrupt. On May 10, 1985, the bankruptcy court authorized the sale of the racetrack for $750,000 in cash and a note and mortgage on the racetrack property in the amount of $10,-750,000. Since the proceeds of the sale would not satisfy all of the claims against the estate, the bankruptcy court had to determine which creditors were to receive priority.

Suffolk County instituted an adversary proceeding claiming priority for more than $4,300,000 in pre-petition and post-petition real property taxes, which had accrued on the property, and for interest and penalties. Lincoln Savings Bank, which, by virtue of an assignment from Flushing Savings Bank, holds a first mortgage lien of $14 million on the race track, joined by the other secured creditors, objected to the County's claim of priority with respect to unpaid post-petition real property taxes, interest, and penalties.

In response to the County's objections to the trustee's plan to sell the racetrack, the bankruptcy court ordered the trustee to pay $500,000 to Suffolk County as partial payment of the County's claim against the estate. In June 1987, the court approved the trustee's sale of the racetrack note and mortgage for $7,500,000 in cash. The closing took place on August 13, 1987.

In an order dated July 7, 1987, the bankruptcy court held that Suffolk County was entitled to priority only with respect to pre-petition real property taxes amounting to $327,231.45. Since the County had already received a $500,000 pre-payment of its claim, the court ordered the County to repay to the trustees $172,768.58, and directed that the County not be permitted to share in the remaining proceeds of the sale of the racetrack. On August 11, 1987, the County applied to the bankruptcy court for a stay of its order. The request was denied. This appeal followed.

On August 19, 1987, this Court stayed the order of the bankruptcy court requiring a $172,768.58 repayment by Suffolk County and ordered that the trustees hold $4 million of the proceeds from the sale of the note and mortgage on the racetrack. The remaining $3.5 million has been distributed to the secured creditors.

## II. DISCUSSION

Suffolk County contends that it is entitled to priority over secured creditors on its claims for: (1) post-petition real property taxes on the racetrack for the tax years 1979–80 through 1984–85; (2) a 5% penalty for late payment of each year's taxes; and (3) interest of 1% per month on the taxes and penalties.

### A. POST–PETITION REAL PROPERTY TAXES

■ With respect to Suffolk County's claim of priority for real property taxes which accrued after the filing of the petition over claims of the secured creditors, the bankruptcy court held that the County's tax claim is a post-petition claim for which lien status cannot be attained due to the automatic stay provision of the Code. 11 U.S.C. § 362. The automatic stay rule provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of ... any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). Governmental units are within the code's definition of the term "entity" and, thus, are subject to the bar against creating, perfecting, or enforcing liens against a bankrupt's property. 11 U.S.C. § 101(14).

■ (1). Suffolk County advances several arguments in support of its position that the automatic stay rule does not relegate the County's post-petition tax claims to a lesser status than the claims asserted by the secured creditors. The County first argues that it did not engage in any *act* to create, perfect or enforce its tax lien, but rather, the tax lien was created and perfected automatically on a fixed day pursuant to the Suffolk County Tax Act. The Suffolk County Tax Act provides that "[a]ll taxes upon real property shall become a lien and be due and payable on December first of each year...." Suffolk County Tax Act, art. 1 § 13(b). Therefore, the County contends that, in the absence of any affirmative action on its part, the tax liens perfect despite the imposition of the automatic stay. The Court finds this argument unpersuasive.

The automatic stay rule is one of the most fundamental precepts of bankruptcy jurisprudence. It provides a bright line at which all efforts to assert or secure an interest against the debtor must cease. The County urges this Court to adopt an overly narrow interpretation of the scope of the automatic stay provision that would allow the County to legislate a rule of "passive creation and perfection" in order to circumvent a central protection afforded the debtor and existing creditors.

In addition to being more in keeping with the nature and purpose of the automatic stay rule, a broad construction of this rule is consistent with the relevant case law. In *In re Carlisle Court, Inc.*, 36 B.R. 209 (Bankr.D.D.C.1983), a secured creditor with a pre-petition lien sought a judgment declaring his priority over the District of Columbia's post-petition real property tax claim. The bankruptcy court held that the automatic stay prevented creation of the tax lien, and therefore, the District of Columbia could not assert priority over the pre-petition lienholder. *See also In re Stack Steel & Supply Co.*, 28 B.R. 151, 155 (Bankr.W.D.Wash.1983) ("any [tax] lien which is claimed by [the] County to have attached *after* the filing of the Chapter 11 petition is void") (emphasis in the original). Accordingly, this Court rejects the County's argument that, in the absence of any action on its part, the automatic stay rule does not preclude perfection of its post-petition tax lien on the debtor's property.

■ (2). The County next argues that, even if the automatic stay rule is otherwise applicable to its tax lien, an exception to the rule allows the County to perfect its interest after intervention of the bankruptcy petition. The County's argument is as follows: An exception to the automatic

stay provides that "[t]he filing of a petition ... does not operate as a stay ... (3) ... of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title." 11 U.S.C. § 363(b)(3). Thus, if § 546(b) is applicable, the automatic stay may be defeated. Section 546(b) provides that "[t]he rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." 11 U.S.C. § 546(b). Section 545 is the portion of the Code which vests in the trustee the power to avoid perfection of a statutory lien. Thus, § 546(b) limits the trustee's power to avoid perfection of a statutory lien where the lienholder's interest in the property existed prior to the filing of the bankruptcy petition and "a generally applicable law" allows perfection of that interest to relate back prior to the filing of the petition.

Suffolk County contends that its interest in collecting real estate taxes on the race track has always existed and that the Suffolk County Tax Act is a generally applicable law which allows for retroactive perfection of that interest. Therefore, the County maintains that, pursuant to § 546(b), the trustee cannot prevent perfection of the lien.

The Fourth Circuit employed this reasoning in *Maryland Nat'l Bank v. Mayor of Baltimore*, 723 F.2d 1138 (4th Cir.1983), giving the City of Baltimore's post-petition real property tax claim priority over claims of secured creditors. The Fourth Circuit held:

> Congress in enacting § 546(b) perceived that the mere intervention of a petition in bankruptcy should not be permitted to defeat what would otherwise be a valid security interest in property. If that interest awaits perfection, and if the generally applicable state law permits that perfection to be good against an intervening purchaser, then the trustee should stand in no better shoes than such an intervening purchaser.

We conclude, then, that the district court was in error when it held that the trustee in bankruptcy could avoid the imposition of the City's real property tax lien for the year 1980–81. Imposition of that tax lien, under Article 81 § 70, was only the last—not the first—step required to perfect the State's long standing interest in the real property in question, and a step which, under Maryland law, no entity could prevent. The City was entitled to that perfection under § 546(b) of the Bankruptcy Code when July 1, 1980 came around, and, thus entitled to the super priority which the then-arising lien afforded.

*Id.* at 1143–44.

The applicability of § 546(b) to the present case is contingent upon this Court's acceptance of two underlying assumptions. First, the Court must find that the County's interest in collecting post-petition real property taxes on the race track property antedates the filing of the bankruptcy petition and, therefore, the invocation of the automatic stay. Second, the Court must view the Suffolk County Tax Act as a "generally applicable law" that permits perfection of an interest in property to be effective retroactively.

With respect to whether the County's interest in collecting the taxes at issue pre-dates the bankruptcy petition, the County maintains that its interest has always existed and, thus, transcends the bankruptcy. Although there is some appeal to the notion that a sovereign has a supreme interest in collecting taxes which dates back to the time when the sovereign first assumed dominion and control over the land, the idea that this amorphous interest is of the type contemplated by § 546(b) is forced and misguided. Any present legal interest the County may have in real property taxes can only be created at such time as those taxes accrue and become due and payable. *See In re Ballentine Bros., Inc.*, 86 B.R. 198, 201 (Bankr.D.Neb.1988). Until that time, the County's interest in collecting those taxes is merely hypothetical and anticipatory in nature.

Contrary to the Fourth Circuit's logic in *Maryland Nat'l Bank*, at the time a government entity's interest in collecting future property taxes first arises (theoretically, the date of the entity's inception) the government's interest is not a ripened one merely awaiting a ministerial act of perfection. Rather, the government at that point possesses only an expectation of collecting future taxes, an expectation that reaches fruition only when the tax to be payed accrues, is assessed, and becomes due and payable.

This Court also rejects the County's second premise, *i.e.*, that the Suffolk County Tax Act is a generally applicable law that permits retroactive perfection of a pre-established interest in property. As noted above, the Suffolk County Tax Act provides that "[a]ll taxes upon real property shall become a lien and be due and payable on December first of each year ..." Suffolk County Tax Act, art. I § 13(b). Noticeably absent from this provision is any language providing that such tax lien will be deemed perfected as of a date earlier than the date the taxes become due and payable. The most reasonable interpretation of the Suffolk County Tax Act is that it creates a tax lien as of the date the property taxes are due, and that that lien is also automatically perfected as of the date the taxes become due. Syllogistically, then, it follows that since this perfected interest post-dates the filing of the bankruptcy petition, it is avoidable by the trustee.

The overly expansive interpretation of § 546(b) for which the County argues does not comport with the limited purpose for which this exception to the trustee's avoidance powers was enacted. The legislative history of this section makes clear that:

The purpose of the subsection is to protect, in spite of the surprise intervention of a bankruptcy petition, those whom State law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection. It is not designed to give the States an opportunity to enact disguised priorities in the form of liens that apply only in bankruptcy cases.

S.Rep. No. 95–989, 95 Cong., 2d Sess. 86, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5872. To hold that the Suffolk County Tax Act is a generally applicable law permitting the County to perfect an ever-existing, anticipatory interest in collecting future taxes, effective as of the date the County first obtained dominion and control over the race track property, would distort § 546(b)'s purpose of preventing a *pre-existing*, unperfected creditor from being harmed by the *surprise* intervention of bankruptcy, and would allow Suffolk County to legislate a tax priority in direct contravention to Congress' express prohibition.

The legislative history of § 546(b) cites to § 9–301(2) of the Uniform Commercial Code as an illustration of what Congress viewed as a generally applicable law that permits retroactive perfection. U.C.C. § 9–301(2), which many states have adopted, affords one with a purchase-money security interest ten days in which to perfect that interest. This ten day grace period allows the interest holder to maintain his status as an earlier creditor over one that obtains and perfects an interest during the intermediate days between the time the purchase-money security interest arose and the date of its perfection. So too does the interest holder maintain his status as a prior secured creditor during the ten day grace period in the context of an intervening bankruptcy.

This Court cannot adopt the position that the Suffolk County Tax Act provides an indefinite grace period during which Suffolk County can perfect its tax lien. Such an interpretation cannot be inferred from the language of the Act itself and is wholly inconsistent with the limited nature of § 546(b)'s exception to the trustee's avoidance power.

It is worthy of note that Congress did provide an exception to the automatic stay for governmental actions or proceedings seeking to enforce a police or regulatory power. 11 U.S.C. § 362(b)(4). This exception has been strictly construed as permitting only actions for injunctive, nonpecuni-

ary relief, and courts applying this exception have closely scrutinized the governmental unit's motive for bringing the action to ensure it is one of public safety and welfare, and not one that protects a monetary interest in the bankruptcy property. *See In re Ballentine*, 86 B.R. at 202; *In re Charter First Mortgage, Inc.*, 42 B.R. 380, 381 (Bankr.D.Or.1984); *In re Herr*, 28 B.R. 465 (Bankr.D.Me.1983); *In re Dan Hixson Chevrolet Co.*, 12 B.R. 917, 920 (Bankr.N. D.Tex.1981); *see also* 124 Cong.Rec. H 11, 092 (daily ed. Sept. 28, 1978) (Statement of Rep. Edwards), *reprinted in* 1978 U.S. Cong.Code & Admin.News 5787, 6436, 6444–45 (stating that it is not the purpose of this section to allow "a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate"). It stands to reason that if Congress intended to except from the automatic stay a governmental entity's ability to collect post-petition property taxes it would have expressly provided for it just as it excepted from the stay a governmental entity's ability to enforce its regulatory or police power. This Court will not legislate an exception that Congress declined to enact. Accordingly, this Court declines to adopt the County's argument that it had a pre-existing interest in collecting unaccrued taxes which was retroactively perfected, for to do so would be to force the proverbial square peg into the infamous round hole.

The County's position that its post-petition taxes are entitled to priority over the claims of secured creditors therefore lacks legal support. The Court, nonetheless, is somewhat troubled by the resulting loss of tax revenue that the County will suffer, tax revenues that it would otherwise derive from the race track property if it were occupied by one not operating under the protection of the bankruptcy code. The very existence of government is contingent upon the successful collection of taxes. The County's receipt of taxes enables it to achieve its objectives and perform the functions of government. Those paying taxes do so in order to enjoy the protection of their property interests and the many benefits of organized society. As the reknowned philosopher John Locke long ago

recognized, "The great and chief end ... of men's uniting into commonwealths, and putting themselves under government, is the preservation of their property; to which in the state of nature there are many things wanting." J. Locke, *Second Treatise of Government*, pg. 86 (1963). This Court, however, must adjudicate within the confines of the Bankruptcy Code and the broad, sweeping power of the automatic stay. The Code draws only a few narrow exceptions to the automatic stay rule. The County asks this Court to either limit the automatic stay rule to allow government entities to circumvent the stay or to stretch the parameters of § 546(b) in such a manner that would be tantamount to legislating an exception to the stay for post-petition property taxes. This the Court cannot do.

■ (3). The County next contends that post-petition taxes should not be considered an ordinary administrative expense under § 503, but should instead be awarded the status of a special expense for the preservation of the estate pursuant to § 506(c). Section 506(c) provides that, "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). Under the County's theory, the property taxes would be deducted directly from the value of the race track, a particular asset of the estate, and not be charged as an administrative expense of the estate in general. The Court does not accept this position.

■ In order to quality for a § 506(c) "super-priority", the expense must be one that the trustee incurred with the consent or for the direct benefit of the creditor whose claim the property secures. *In re Flagstaff Foodservice Corp.*, 762 F.2d 10 (2d Cir.1985); *Brookfield Prod. Credit Ass'n v. Barron*, 738 F.2d 951, 952 (8th Cir.1984). Section 506(c) was not intended to encompass ordinary administrative expenses that are attributable to the general operation and dissolution of an estate in bankruptcy. Rather, it was designed to extract from a particular asset the cost of

preserving or disposing of that asset. The trustee's payment of real property taxes might benefit Lincoln Savings Bank and the other secured creditors to the extent that monies raised from the collection of property taxes are used, in part, to fund the local fire, police, and road maintenance departments, which provide protection to the secured property against vandalism and fire, and ensure that the adjoining road is kept in good condition. This indirect benefit, however, is insufficient to bring these post-petition property taxes within the scope of § 506(c).

Courts have narrowly construed § 506(c) to encompass only those expenses that are specifically incurred for the express purpose of ensuring that the property is preserved and disposed of in a manner that provides the secured creditor with a maximum return on the debt and also apportions those costs to the secured creditor who, realistically, is assuming the asset. *See In re Cascade Hydraulics and Utility Serv.*, 815 F.2d 546, 548 (9th Cir.1987); *In re Trim–X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982). Although in exchange for the payment of property taxes, the estate would reap benefits that might aid in preserving the asset in the advent of fire or from the threat of vandalism, this incidental benefit is not what was contemplated by § 506(c). Monies a government entity derives from the collection of real property taxes fund many governmental operations and services which are not directly related to preservation and disposal of the asset and in no way provide a benefit to the secured creditor. Real estate tax revenues support public parks, libraries, schools, and social services, which do not constitute expenses peculiarly connected with preserving or disposing of the parcel of land.

Moreover, the Bankruptcy Code explicitly sets forth the level of priority to be afforded unsecured tax claims. Section 503, which enumerates general administrative expenses, provides that "... there shall be allowed, administrative expenses ... including ... (B) any tax—(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7)...." 11 U.S.C. § 503(b)(1)(B)(i). Section 507(a) states,

"The following expenses and claims have priority in the following order ... (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for ... (b) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition." 11 U.S.C. § 507(a)(7)(B). Thus, § 503(b)(1) indicates that tax claims are generally afforded the status of ordinary administrative expenses, thereby receiving first priority *after* secured claims, unless they are the type of taxes specified in § 507(a)(7), in which case they will receive a seventh ranked priority *after* secured claims.

Although § 503(b)(1) and § 507(a)(7) do not address post-petition tax claims, § 502(i) equates unsecured post-petition tax claims with unsecured pre-petition tax claims and indicates that they should be granted the same priority. Section 502(i) provides that "[a] claim that does not arise until after the commencement of the case for a tax priority under section 507(a)(7) ... shall be determined, and shall be allowed ... or disallowed, the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(i).

There appears to be uncertainty as to whether unsecured post-petition taxes should be accorded § 503(b)(1)(B) priority or the lesser § 507(a)(7) priority. *See In re Carlisle Court, Inc.*, 36 B.R. 209. This Court does not have to reach this issue as the County would not receive priority over Lincoln's claim under either § 503(b)(1) or § 507(a)(7) since both priorities are subordinate to the claims of secured creditors. It is apparent, however, that the County's tax claims should be placed in one of those two categories and not be given the superpriority under § 506(c) for which the County argues. *See Ballentine*, 86 B.R. at 203; *In Re Bellman Farms, Inc.*, 86 B.R. 1016, 1021 (Bankr.D.S.D.1988). To hold that post-petition tax claims are special expenses of preserving or disposing of particular property would fly in the face of the

cumulative effect of §§ 502(i), 503(b)(1), and 507(a)(7).

In sum, this Court is unpersuaded by the arguments the County has presented. The automatic stay prevents the County from acquiring and perfecting, passively or otherwise, a post-petition lien. The County's lien, thus, may be avoided by the trustee. Accordingly, the County's unsecured tax lien is relegated to the status of an ordinary administrative expense, which entitles the County to either a first or seventh priority *after* the claims of secured creditors under § 503(b)(1)(B)(i) or § 507(a)(7)(B), respectively.

## B. POST–PETITION INTEREST

Upon holding that the County's claim for post-petition property taxes is not a secured claim, it is unnecessary for this Court to reach the question of whether the County is entitled to interest on the unpaid post-petition taxes. This Court finds it worthy to note, however, that even if this Court had found that the County had a secured interest in the post-petition property taxes, it would not have awarded the County interest on that amount. Resolution of this issue of first impression in this Circuit turns on a subtle distinction in statutory construction. Code § 506(b) provides that:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b). The County contends that the proper interpretation of § 506(b) requires that, to the extent that the value of the property of the estate in bankruptcy is greater than the County's "secured" tax claim, interest should be paid on that secured claim. The County bases this reading of the statute on the placement of the comma after the phrase "interest on such claim". According to the County's inter-

pretation, the comma sets apart the language "interest on such claim" as a separate and distinct clause to which the qualifying clause "provided for under the agreement" does not apply. Therefore, the County contends that the prerequisite of providing for such payment in an agreement applies only to fees, costs, and charges, and not to interest payments.

To support this interpretation of § 506(b), the County cites *In re Best Repair Co.*, 789 F.2d 1080 (4th Cir.1986), where the Fourth Circuit held that based upon the placement of the comma, interest on a claim secured by property can be had against such property even in the absence of any agreement providing for interest. The Fourth Circuit reasoned that such interpretation is supported by "the plain meaning of the language and grammar of the provision." *Id.* at 1082.

This Court rejects the reasoning of *In re Best Repair Co.*, in favor of the contrary holding in *In re Ron Pair Enterprises*, 828 F.2d 367 (6th Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 420 (1988). In *In re Ron Pair Enterprises* the Sixth Circuit, interpreting § 506(b), considered pre-code common-law doctrine as well as the language of the statute. This method of statutory interpretation is preferable to that employed by the Fourth Circuit. In *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859, *reh'g denied,* 475 U.S. 1090, 106 S.Ct. 1482, 89 L.Ed.2d 736 (1986), the Supreme Court held that "[t]he normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codifications." *Id.* 106 S.Ct. at 759–60.

Pre–Code cases have held that interest on non-consensual secured claims (claims where there is no agreement between the parties) may not accrue after the bankruptcy petition is filed. *See In re Kerber Packing Co.*, 276 F.2d 245, 247–48 (7th Cir. 1960); *United States v. Mighell,* 273 F.2d

682, 684 (10th Cir.1959); *United States v. Bass,* 271 F.2d 129, 131 (9th Cir.1959). After noting that the legislative history of § 506(b) showed no intent to change the pre-Code doctrine, the court in *In re Ron Pair Enterprises* held that § 506(b) merely codified and did not change pre-Code doctrine. Certainly, the placement of a somewhat ambiguous comma cannot be said to constitute an expression of specific congressional intent. Since it is more sound to base the interpretation of § 506(b) on the lack of intent to overrule pre-Code cases than on the placement of a comma, this Court finds convincing the reasoning of the Sixth Circuit in *Ron Pair Enterprises.*

In the case at bar, the property taxes accrued without any agreement and, thus, the County's claim is non-consensual. Therefore, since the County has a non-consensual claim against the estate, § 506(b) would not afford the County interest on that claim.

## C. PENALTIES

 Similarly, although it is unnecessary for the Court to reach the question of whether Suffolk County is entitled to recover penalties for nonpayment of post-petition real property taxes, this Court notes that awarding the County such penalties would be inappropriate. Debts owed to the government as a penalty or forfeiture cannot be recovered against a bankrupt estate unless the amount owed reflects an actual pecuniary loss. *Simonson v. Granquist,* 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962). The United States Supreme Court has noted, with respect to enforcement of tax penalties against the estate of bankrupts, that allowance of such penalties "would serve not to punish the delinquent taxpayers, but rather their entirely innocent creditors." *Id.* at 41, 82 S.Ct. at 539. The County cannot establish that these penalties represent an actual pecuniary loss. Assessment of penalties, therefore, would needlessly deprive Lincoln Savings Bank and the other secured creditors of monies that they would otherwise recover to compensate for their actual pecuniary losses suffered as a result of the bankruptcy.

## III. CONCLUSION

Accordingly, for the reasons stated throughout this opinion, the decision of the Bankruptcy Court is affirmed. The Clerk of the Court is directed to return the record to the Bankruptcy Court.

SO ORDERED.