### In re GUTERL SPECIAL STEEL CORPORATION, Debtor.

Stanley G. MAKOROFF, Trustee for Guterl Special Steel Corporation, Plaintiff,

v.

The CITY OF LOCKPORT, NEW YORK; the School District of Lockport, New York; and County of Niagra, New York, Respondents.

Bankruptcy No. 82–2590.
Adv. No. 87–0393.

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 18, 1989.

See also, Bkrtcy. 91 B.R. 721.

Stanley G. Makoroff, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., for plaintiff.

Alan E. Cech, Asst. U.S. Atty., Pittsburgh, Pa.

Charles A. Moster, Office of Gen. Counsel, U.S. Dept. of Commerce, Washington, D.C.

Thomas H. Brandt, Deputy Corp. Counsel, City of Lockport, Andrews, Pusateri, Brandt, Shoemaker, Higgins & Roberson, P.C., Lockport, N.Y.

Glenn S. Hackett, Niagra County Atty., Morton H. Abramowitz, Asst. County Atty., Lockport, N.Y.

Stephen I. Goldring, Pittsburgh, Pa., Asst. U.S. Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is an action by the Trustee to determine the priority of parties to the remainder of Debtor's estate, same having been liquidated and presently being held in escrow by this Court. The parties in question, the Economic Development Administration of the United States Department of Commerce ("EDA or mortgagee"), the assignee of the mortgagee as the secured creditor, and the City of Lockport ("Lockport") and County of Niagra ("Niagra") as the taxing authorities, have stipulated to the relevant facts. The pertinent issues before the Court are as follows:

(1) Did Lockport and Niagra violate the automatic stay by creating postpetition tax liens against Debtor's real property?

(2) Are Lockport and Niagra nevertheless entitled to perfection of their postpetition tax liens pursuant to § 546(b)?

(3) If Lockport and Niagra do not possess secured claims, are they entitled to administrative priority claims pursuant to §§ 503(b) and 507(a)(1)?

A hearing was held wherein the parties presented their arguments, and provided the Court with trial memoranda. Based upon same this Court finds that Lockport and Niagra did in fact create, as opposed to merely perfecting, postpetition liens in violation of the automatic stay provisions of the Bankruptcy Code, and that these liens are null and void *ab initio*. We further find that if the actions of Lockport and Niagra were to be sanctioned under § 362, their liens would still be avoidable under § 545, and the Trustee would not be impaired by the limitations imposed by § 546(b). Having so determined, and it appearing that the amount in escrow is insufficient to satisfy even the EDA's (mortgagee) claim, it is unnecessary for this Court to pursue the remaining issue, relating to priority status.

## FACTS

Prior to the filing of its bankruptcy petition, Debtor owned several pieces of real estate located in the City of Lockport, County of Niagra, State of New York. On October 29, 1981, Debtor took two (2) $7.5 million mortgages, one to Marine Midland Bank ("Marine") and one to Southern Investors Management Company, Inc. ("SIMCO"). These mortgages were both recorded on October 30, 1981, in the Niagra County Clerk's office. The EDA guaranteed repayment of ninety percent (90%) of the principal and interest on the Midland loan; the Farmers Home Administration ("FMHA") guaranteed ninety percent (90%) of the principal and interest on the SIMCO loan.

Debtor filed its Chapter 11 bankruptcy petition on August 9, 1982. As of that time Debtor owed no real property taxes to either Lockport or Niagra. Subsequent to the bankruptcy filing, Debtor defaulted on its mortgages with Marine and SIMCO. On August 26, 1983, EDA paid Marine $7,883,054.84, which sum represented ninety percent (90%) of the balance due and owing on the Marine loan. As a result of this guaranty payment, EDA was assigned all of Marine's right, title and interest, as mortgagee, in Debtor's collateral. Thereafter, on November 1, 1983, this Court ordered Debtor to liquidate the mortgaged collateral; said liquidation was accomplished by a public sale in open court on March 27, 1984. The successful purchaser bid and paid $9,517,000.00.

Although Debtor maintained a current tax status until the commencement of the case, following the filing of its bankruptcy petition Debtor failed to pay various taxes on its four (4) parcels of real estate. The amounts of taxes owed and descriptions thereof are as follows:

| Entity | | Type | Amount |
|---|---|---|---|
| Lockport | 1982–83 | Base School Tax | $ 69,397.27 |
| | 1983–84 | Base School Tax | 78,995.37 |
| | 1983 | Base City Tax | 93,771.15 |
| | 1984 | Base City Tax | 153,263.72 |
| | | | $395,427.51 |

| Entity | Type | Amount |
|--------|------|--------|
| Niagra | 1983 County Tax | $ 33,085.20 |
|        | 1984 County Tax | 36,445.90 |
|        |                 | $ 69,531.10 |
| Total Base Tax | | $464,958.61 |

Lockport's assertion of its base City Tax arises as a result of the following language found at Section 271 of its City Charter:

> All general city taxes hereinafter levied in said city *shall be a lien* upon the lands on which they are assessed, *for ten* (10) *years from the first publication of the notice of such tax or assessment* by the Treasurer, and shall have priority in the order of time in which they become liens ... Such liens shall be superior to any mortgage, judgment or other lien of any nature affecting said premises except state and county taxes and liens in favor of the United States. (emphasis added).

Lockport published the notice for the 1983 tax year on January 4, 1983 and for the 1984 tax year on January 3, 1984.

Pursuant to Sections 217 and 266 of Lockport's Charter, water rents are also a lien on the real estate where consumed or supplied and are added to the yearly City tax bill.

The authorization for Lockport's charge of a school tax against real estate is found in Section 1306 of New York's Real Property Tax Law. Section 1312 of that law states:

> School taxes *shall become a lien as of the date and hour of the confirmation or final adoption of the school roll by the school authorities.* Unpaid interest shall be included in and deemed part of the unpaid tax. Such taxes including such unpaid interest shall remain a lien until paid. (emphasis added).

In accordance with this statutory direction Lockport's Board of Education confirmed and adopted the 1982–83 school tax roll on September 13, 1982 and the 1983–84 school tax roll on September 1, 1983.

As with the unpaid water rates, Lockport is directed by statute to collect unpaid school taxes in the same manner as unpaid City taxes. If said taxes are unpaid, the City must pay the sum to the school district and assume the collection responsibilities.

Niagra asserts the validity of its tax liens by relying on § 900 of the New York Property Tax Law which outlines the procedures for creating county tax liens:

> § 900. Levy and Extension of taxes
> 1. Not later than the thirty first day of December in each year, *the board of supervisors in each district shall levy the taxes for the county* upon the basis of the full valuation of the taxable real property determined in accordance with title one or title two of article eight of this chapter *and shall enter in a separate column on the assessment roll of each city and town* opposite the assessment of each parcel of real property, *the amount to be paid as a tax thereon.* (emphasis added).

The County contends that pursuant to said procedure, the county taxes become statutory liens as of the confirmation date of the assessment rolls, and the spreading of the tax by the County legislature. This occurs at the annual meeting during which time the County's budget is adopted, and is held no later than the twentieth (20th) of December of each year. The County levied its 1983 taxes by adoption of Resolution # 416–82 on December 21, 1982, and its 1984 taxes by adoption of Resolution # B–41 on December 20, 1983.

On November 7, 1984, Debtor deposited $549,550.00 remaining from its September 1984 sale with an escrow agent pending resolution of this dispute. As of December 28, 1987 said account contained $689,-866.75. The taxing authorities claim entitlement to over $500,000.00 of said sum. The outstanding balance owed to the mortgagee is in excess of $4 million.

## ANALYSIS

In recent years, some Courts have concluded in a general fashion that postpetition property taxes are to be accorded priority status, either as administrative expenses under §§ 503(b)(1)(B) and 507(a)(1), or as tax claims entitled to distribution

pursuant to § 507(a)(7). *In re Trowbridge*, 74 B.R. 484 (Bankr.E.D.Pa.1987); *In re Carlisle Court*, 36 B.R. 209 (Bankr.D.C. 1983). In both of these cases, however, the parties agreed that postpetition taxes could not rise above prepetition secured creditors. As that is the very crux of the issue at bar, and as those courts provided no rationale for their conclusions, we cannot rely on them for the aforesaid general proposition. Rather, the appropriate starting point is § 362 of the Bankruptcy Code relating to the automatic stay.

■ Section 362(a)(4) is the applicable portion of the statute in the instant case, and it states in pertinent part as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of— ...

(4) any act to create, perfect, or enforce any lien against property of the estate; ...

The language "all entities" has been held to include governmental agencies. *In re Parr Meadows Racing Association, Inc.*, 92 B.R. 30 (E.D.N.Y.1988); *In re Eisenberg*, 7 B.R. 683 (Bankr.E.D.N.Y.1980); 11 U.S.C. § 101(14).

Initially we note that the automatic stay provision is one of the most fundamental rubrics of bankruptcy jurisprudence. It creates a pronounced demarcation, after which all parties must cease any attempts to change their positions in relation to their interests in the debtor. *In re Parr Meadows, supra.* The fundamental motive is twofold: first, to protect the present interests of the creditors, promoting the goal of equal treatment, and avoiding a race to dismember the debtor; and second, and perhaps more important, to provide the debtor with a breathing spell in which to remove itself from the pressures which forced it to seek bankruptcy protection in the first instance. *In re H & H Beverage Distributors*, 850 F.2d 165 (3rd Cir.1988). This precept is so all-encompassing, courts have held that all actions taken in violation of the stay are null and void, even when the offending party has acted without actu-al notice of the stay's existence. *In re Eisenberg, supra,* and cases cited therein.

In the case at bar, Debtor filed its Chapter 11 bankruptcy petition on *August 9, 1982.* Lockport published its city tax notices for 1983 and 1984 on *January 4, 1983* and *January 3, 1984.* Lockport's school tax rolls for 1982–83 and 1983–84 were confirmed and adopted on *September 13, 1982* and *September 1, 1983.* Niagra's county taxes for 1983 and 1984 were adopted by resolutions dated *December 21, 1982* and *December 20, 1983.*

Barring the applicability of subsection (b) of § 362, and in accordance with § 362(a)(4), all of these actions would be clearly violative of the automatic stay, as postpetition actions to create, perfect or enforce liens against property of the estate. Therefore, unless the actions by Lockport and Niagra are protected by one of the enumerated exceptions under § 362(b), their respective liens are in violation of the automatic stay and are null and void.

The first exception which must be examined is § 362(b)(9), which states in pertinent part as follows:

(b) The filing of a petition under section 301, 302, or 303 of this title, ... does not operate as a stay— ...

(9) under subsection (a) of this section, of the issuance to the debtor by a governmental unit of a notice of tax deficiency; ...

This Circuit has stated that while a governmental unit may *notify* a debtor of a tax *deficiency,* said entity may not *collect* taxes or *create* a lien during the stay:

More importantly, issuance of the notice was not *tantamount to the creation of a lien.* First H & H was in the midst of an administrative appeal in the state court system, and the Commonwealth cannot obtain a lien until the appeal is resolved. Second, no lien is created under Pennsylvania law until the Commonwealth demands the amount, interest, penalty and cost, and the taxpayer neglects or refused to pay. Thus, the Commonwealth could not create a lien until it made formal demand for the full amount due upon completion of the appeal and

then filed the amount of the liability with the prothonotary. *Pursuant to § 362(a), these are the acts that would violate the stay.* (Emphasis in original). *In re H & H Distributors, supra* at 169.

All parties agree that the actions taken by Lockport and Niagra were much more than mere notification of a deficiency, and therefore, the exception in § 362(b)(9) is inapplicable to this case.

The true contention among the parties is whether the actions taken by Lockport and Niagra were acts of lien creation or perfection of a prior interest in the property. As stated previously, mortgagee asserts that the postpetition publications, adoptions and confirmations by Lockport and Niagra were acts *creating* liens. These acts, therefore, would be violations of the automatic stay, 11 U.S.C. § 362(a)(4).

Lockport and Niagra contend that their actions fall within the exception provided at section 362(b)(3) which states in pertinent part:

(b) The filing of a petition under section 301, 302, or 303 of this title, ... does not operate as a stay—

(3) under subsection (a) of this section, of any act to perfect an *interest in property* to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title, ... (emphasis added).

Section 546(b) states as follows:

The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to *any generally applicable law* that permits *perfection of an interest* in property to be effective against an entity that *acquires rights* in such property *before the date of such perfection.* (emphasis added).

Section 545(2) provides that:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien— ...

(2) *is not perfected or enforceable at the time of the commencement of the case* against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists. (emphasis added).

It is manifestly clear that creation, as opposed to perfection, is *not* excepted from the automatic stay. A creditor's interest must be created prior to the petition, needing only to be perfected postpetition. *In re New England Carpet. Company, Inc.,* 26 B.R. 934 (Bankr.D.Vt.1983).

Using this specific dichotomy of interests, Lockport and Niagra assert that their underlying interests were created prepetition and that their various postpetition actions were simply perfections of those interests. Although the Trustee could avoid such liens by the terms of § 545(2), Lockport and Niagra assert that their applicable state and local laws allow these acts of perfection, and therefore the trustee would be prohibited from avoiding these liens by § 546(b).

The propriety of utilizing §§ 546(b) and 362(b)(3) in the case at bar requires the absolute endorsement by this Court of two presumptions of law championed by Lockport and Niagra; first, that their interests in collecting postpetition real estate taxes *antedated* the bankruptcy filing; and second, that their state and local statutes are to be viewed as "generally applicable law." See *In re Parr Meadows Racing Association, Inc., supra.*

The legal argument in the instant case very nearly parallels that made by Suffolk County, the taxing body in *Parr Meadows.* Lockport and Niagra rely, as did Suffolk, upon the Fourth Circuit's decision in *Maryland National Bank v. Mayor and City Council of Baltimore,* 723 F.2d 1138 (4th Cir.1983), claiming a perpetual, sovereign right and interest in real estate taxes:

Where, however, immovable and ever-present real estate is at issue, the State's interest in the property for the purposes of real estate taxation is a very real and not-to-be-doubted interest that pre-exists a petition in bankruptcy. The imposition of the lien representing the taxes due for any given tax year is but the manifestation or perfection of that underlying interest.

*Id.* at 1144, n. 14.

All taxing authorities, cloaked in their sovereign reignments, desire the courts to

view their interests in the collection of taxes as a supreme function of some eternal regency over the lands and fixtures appurtenant thereto. However, as the Court in *Parr Meadows* stated, the idea that § 546(b) contemplated such an ethereal interest is devoid of logic.

> Any present legal interest the County may have in real property taxes can only be created at such time as those taxes *accrue and become due and payable* ... Until that time, the County's interest in collecting those taxes is *merely hypothetical and anticipatory* in nature.

*Parr Meadows, supra* at 33. (emphasis added).

Each of the relevant statutes raised by Lockport and Niagra require affirmative, primary actions to initiate lien status for real estate taxes. Lockport's city tax assessments must be published; the school taxes must be confirmed by the school board. Similarly, Niagra's county tax levies must be adopted by resolution. These are the activities which cause the taxes *to be assessed and become due and payable.* Until the tax to be paid accrues, is assessed, and becomes due and payable, Lockport and Niagra merely possess an expectation of future collections. Therefore, the acts of publication, confirmation, and adoption are acts of creation. Even if we were to determine that these actions were simultaneously acts to create and perfect, Lockport and Niagra must lose, because these acts to create and perfect still occurred postpetition in violation of § 362(a)(4).

Additionally, a review of the legislative history of Section 546(b) shows that the statutes cited by Lockport and Niagra are not the "generally applicable law" envisioned by Congress when this Section was drafted. Specifically that Congressional Report states:

> The purpose of the subsection is to protect, in spite of the surprise intervention of [a] bankruptcy petition, those whom State law protects by allowing them to perfect their liens or interests *as of an effective date that is earlier than the date of perfection.*

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 371 (1977); S.Rep. No. 95–989, 95th Cong. 2d Sess. 86 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5872, 6327. (emphasis added.) As an example of such generally applicable law, the drafters cited Section 9–301(2) of the Uniform Commercial Code, which allows a purchase money security interest, perfected within ten (10) days of its creation, to be considered perfected on the creation date, so as to defeat an intervening perfected creditor. None of the statutes cited by either Lockport or Niagra provide for any perfection of interests to relate to an earlier action. The annual tax liens do not attach to the land *retroactively* to the date of Lockport and Niagra's charter incorporations. Their statutes specifically call for the liens to arise as of the date of publication, confirmation, and/or adoption, respectively. *Leges suum ligent latorem.*

An appropriate Order will be issued.

### ORDER OF COURT

IT APPEARING to the Court that the activities of the above-captioned Respondents were in fact acts to create, perfect and/or enforce a lien against property of the estate, as opposed to merely perfect a prior interest in the property of the Debtor, postpetition and in violation of the automatic stay, it is hereby ORDERED, ADJUDGED and DECREED that said liens be and are null and void, *ab initio.*

IT FURTHER APPEARING to the Court that as the mortgagee's security interest in the fund in question exceeds the sums held in said fund, IT IS FURTHER ORDERED that the total sum being held by the Clerk of the U.S. Bankruptcy Court for the Western District of Pennsylvania, shall be paid to the Economic Development Administration of the United States Department of Commerce, assignee of the mortgagee.