**In the Matter of GUTERL SPECIAL STEEL CORPORATION, Debtor.**

**Stanley G. MAKOROFF, Trustee for Guterl Special Steel Corporation, Plaintiff–Appellee,**

**v.**

**The CITY OF LOCKPORT, NEW YORK the Lockport City School District and County of Niagara, New York, Respondents–Appellants.**

**Civ. A. No. 89–482.**

United States District Court, W.D. Pennsylvania.

Feb. 12, 1990.

Stanley G. Makoroff, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., for plaintiff-appellee.

Alan E. Cech, Asst. U.S. Atty., Charles A. Moster, Office of Gen. Counsel, U.S. Dept. of Commerce, Washington, D.C., for Economic Development Admin.

Glen S. Hackett, Morton H. Abramowitz, Niagara County Attys. Office, Lockport, N.Y., for respondent-appellant, County of Niagara.

Thomas H. Brandt, Corp. Counsel, City of Lockport, Lockport, N.Y., for respondent-appellant, City of Lockport, Lockport City School Dist.

## MEMORANDUM OPINION

COHILL, Chief Judge.

Presently before the Court is an appeal from the United States Bankruptcy Court for the Western District of Pennsylvania of an action to determine the priority of the parties to the remainder of the Debtor's estate. We have jurisdiction pursuant to 28 U.S.C. § 158 and Bankruptcy Rule 8001.

### ISSUES

The parties have presented the following issues: 1) Whether the bankruptcy court correctly held that the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, bars the county from obtaining tax lien status for tax claims created after Guterl filed for bankruptcy; 2) whether the bankruptcy court correctly held that the exceptions to the automatic stay set forth in 11 U.S.C. §§ 362(b)(3) and 546(b) are inapplicable to these postpetition tax liens; 3) whether the county is entitled to treat its claim only as an unsecured administrative expense; and 4) whether the county may obtain postpetition interest and penalties on its asserted tax liens.

### FACTS

The parties in this appeal are the Economic Development Administration of the United States Department of Commerce ("EDA") and the City of Lockport ("Lockport") and County of Niagara ("Niagara"). These parties have stipulated to the facts, which we restate from the bankruptcy judge's opinion and order of January 18, 1989 and from the parties' briefs.

The Debtor, Guterl Special Steel Corporation ("Guterl"), owned real estate located in the City of Lockport, County of Niagara, State of New York. On October 29, 1981, Guterl gave two mortgages, one to Marine Midland Bank, N.A. ("Marine") for $7,500,-000 and one to Southern Investors Management Company, Inc. ("SIMCO") for $7,500,-000. On October 30, 1981 both mortgages were recorded in the Niagara County Clerk's Office.

EDA guaranteed repayment of 90% of the principal and interest of the Marine loan. The Farmers Home Administration ("FmHA") guaranteed 90% of the principal and interest of the SIMCO loan.

On August 9, 1982, when Guterl filed its Chapter 11 petition in the United States Bankruptcy Court for the Western District of Pennsylvania, Guterl was current on all taxes. The Debtor owed no real property taxes to either Lockport or Niagara nor did it owe taxes to the Lockport City School District ("School District").

After filing for bankruptcy, Guterl defaulted on its mortgages. On August 26, 1983 EDA paid Marine $7,883,854.84, representing 90% of the balance due on the Marine note. Marine assigned all its right, title and interest in Guterl's collateral to EDA.

On November 1, 1983 the bankruptcy court ordered Guterl to liquidate the mort-

gaged collateral. On March 27, 1984 at public sale in open court, the successful bidder purchased the assets for $9,517,000.

After filing for bankruptcy, Guterl failed to pay various taxes on its real estate. Lockport asserts that the Debtor owes base school taxes for 1982 through 1984 and base city taxes for 1983 and 1984, including water and sewer bills in the amount of $108,208.85, for a total of $395,-427.51. Niagara claims that Guterl owes it $69,531.10, which, added to Lockport's claim, amounts to total taxes of $464,-958.61.

On November 7, 1984 Guterl deposited $549,550 remaining from the September 1984 sale with an escrow agent, pending resolution of the tax dispute. As of December 28, 1987, the account contained $689,866.75. As of January 18, 1989, the date of the bankruptcy judge's opinion, the taxing authorities claimed entitlement to over $500,000 of that amount. The outstanding balance due on the mortgage exceeds $4 million.

The parties have provided the Court with an overview of the relevant taxing schemes as follows:

### City Tax

Section 20 of New York's General City Law authorizes the city to tax real property. Section 271 of the city charter, in turn, states as follows:

All general city taxes hereinafter levied in said city shall be a lien upon the lands on which they are assessed, for ten (10) years from the first publication of the notice of such tax or assessment by the Treasurer, and shall have priority in the order of time in which they become liens.... Such liens shall be superior to any mortgage, judgment or other lien of any nature affecting said premises except state and county taxes and liens in favor of the United States.

In accordance with Section 268 of the city charter, Lockport published the notice for the 1983 taxes on January 4, 1983. The notice for the 1984 taxes was published on January 3, 1984.

### Water Tax

Section 217 of the city charter states: "All water rents and the interest charges thereon until paid, shall be a lien upon the land and buildings where the water was consumed or supplied." Section 266 of the city charter states that unpaid water rents are to be added to the yearly city tax bill and "regarded as the general City tax."

### School District Tax

The School District is authorized by Section 1306 of New York's Real Property Tax Law to levy taxes on real property.

Section 1312 of the Real Property Tax Law states:

1. School taxes shall become a lien as of the date and hour of the confirmation or final adoption of the school roll by the school authorities. Unpaid interest shall be included in and deemed part of the unpaid part of the unpaid tax. Such taxes including such unpaid interest shall remain a lien until paid.

2. Priority and parity as between such tax liens and other liens shall be determined in the manner prescribed in title two of article nine of the chapter.

The Board of Education for the School District confirmed and adopted the school tax roll for the year 1982–83 on September 13, 1982. The school board confirmed and adopted the school tax roll for the year 1983–84 on September 1, 1983.

Under Section 1332(5) of the Real Property Tax Law, Lockport must enforce collection of the unpaid school tax in the same manner and at the same time "as though such unpaid taxes were City taxes." In the event that taxes are unpaid, Lockport must pay over to the School District the amount of unpaid taxes; Lockport did so in this case.

Niagara relies on Section 900 of the New York Property Tax Law which outlines procedures for creating county tax liens:

**§ 900. Levy and Extension of Taxes**

1. Not later than the thirty first day of December in each year, the board of supervisors in each district shall levy the taxes for the county upon the basis of

the full valuation of the taxable real property determined in accordance with title one or title two of article eight of this chapter and shall enter in a separate column on the assessment roll of each city and town opposite the assessment of each parcel of real property, the amount to be paid as a tax thereon.

Niagara contends that the county taxes become statutory liens as of the confirmation date of the assessment rolls and the spreading of the tax by the county legislature. This occurs at the annual meeting held late in December each year, when Niagara's budget is adopted. Niagara levied its 1983 taxes by adopting Resolution #416–82 on December 21, 1982 and its 1984 taxes by adopting Resolution #B–41 on December 20, 1983.

DISCUSSION

In this bankruptcy appeal we must balance secured creditor EDA's interest in recovering as much of its claim as possible from the sale of the Guterl assets against Lockport's and Niagara's interests in obtaining payment of property taxes. Because the proceeds of the 1984 sale will not satisfy all of the claims against the Debtor's estate, this Court must determine whether EDA or Lockport and Niagara has priority as to the amount remaining in the escrow account. The crux of the issues here is whether postpetition taxes take preference over the claims of a prepetition secured creditor. We find that under recently decided controlling cases, EDA, as the secured creditor, has priority over the tax claims.

From the date of filing of a bankruptcy petition, the automatic stay provision of the Bankruptcy Reform Act of 1978 ("the Code") prohibits "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4).

The automatic stay ensures that no creditor receives more than an equitable share of the bankrupt's estate. This equitable treatment requires that all creditors, both public and private, be subject to the automatic stay. *In re Parr Meadows Racing Ass'n., Inc. ("Parr Meadows")*, 880 F.2d 1540, 1545 (2d Cir.1989), *cert. denied*, ——

U.S. ——, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990). Congress used broad language to prohibit "all entities", 11 U.S.C. § 362(a), including a "governmental unit", 11 U.S.C. § 101(14), from taking action against a debtor's property during bankruptcy proceedings. *Parr Meadows*, 880 F.2d at 1545.

All actions taken in violation of the stay are void. *In re Eisenberg*, 7 B.R. 683, 686 (Bankr.E.D.N.Y.1980). *See also In re Parr Meadows Racing Ass'n., Inc. ("In re Parr Meadows")*, 92 B.R. 30, 32 (E.D.N.Y. 1988) (any tax lien claimed by county to attach after filing of Chapter 11 petition void), *aff'd in part, rev'd in part*, 880 F.2d 1540 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990).

The bankruptcy court enumerated the following actions taken against Guterl's estate after the bankruptcy petition was filed on August 9, 1982: 1) Lockport published its city tax notices for 1983 on January 4, 1983 and for 1984 on January 3, 1984; 2) the School District confirmed and adopted the school tax rolls for 1982–83 on September 13, 1982 and for 1983–84 on September 1, 1983; and 3) Niagara adopted by resolution the county taxes for 1983 on December 21, 1982 and for 1984 on December 20, 1983. The bankruptcy court concluded that unless an exception to § 362 justified these actions, the liens, as violations of § 362, were null and void. The bankruptcy court then found that none of the exceptions raised by Lockport and Niagara applied and that, therefore, the city and county had violated the automatic stay. *In re Guterl*, 95 B.R. 370 (Bankr.W.D.Pa.1989).

Lockport and Niagara argue again on appeal that §§ 362(b)(3) and 546(b) exempt from the automatic stay any act that can perfect a preexisting interest in property if local law allows such perfection against an intervening owner. Appellants assert that Lockport and Niagara had interests in the Debtor's real property before the petition was filed on August 9, 1982. In addition, they contend that applicable New York law permits Lockport and Niagara to perfect those interests against any entity that hypothetically acquired rights in the Debtor's

property before either Lockport or Niagara perfected those rights. Lockport's brief at 8; Niagara's brief at 6.

Section 362(b)(3) of the Code states in part:

> (b) The filing of a petition under ... this title ... does not operate as a stay—
> (3) under subsection (a) of this section, of any act to perfect *an interest in property* to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title.

11 U.S.C. § 362(b)(3) (emphasis added).

Section 546(b) provides in part:

> (b) The rights and powers of a trustee under ... this title are subject to *any applicable law* that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.

11 U.S.C. § 546(b) (emphasis added).

Lockport and Niagara rely on *Maryland National Bank v. The Mayor and City Council of Baltimore ("MNB"),* 723 F.2d 1138 (4th Cir.1983), to support their position that Lockport and Niagara had a prepetition "interest in property" which by operation of "applicable law" in New York was perfected against EDA.

Interpreting Maryland law, the court in *MNB* stated that Maryland retained the right to require first application of the proceeds from the sale of property to taxes due and payable by the time of distribution. The court further stated that the right is "perfected ... at the very moment an interest in the real estate ... arises." The interest, under the generally applicable Maryland law, is "ever-present." *Id.* at 1142. Therefore, "perfection of the right to collect automatically occurs on the first day of July in each and every year." *Id.* at 1142–43 n. 10, (referring to Md.Ann.Code art. 81 § 70, *see Id.* at 1141 n. 3). The court also reasoned that Maryland's tax statute constituted "applicable law" under section 546(b). *Id.* at 1143.

■ We are not persuaded by *MNB*, particularly in light of controlling precedent in Pennsylvania that specifically rejects the *MNB* rationale. In *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp. ("W–P Steel Corp."),* 884 F.2d 80, 85 (3d Cir.1989), the Court of Appeals for the Third Circuit found unconvincing a proposition resting on *MNB* that the law creating a postpetition tax lien merely perfected a preexisting state *interest* in collecting tax revenues, "an interest existing perhaps since the creation of that Commonwealth."

The Court of Appeals for the Third Circuit found more persuasive the reasoning of the Court of Appeals for the Second Circuit in a case factually and legally similar to the present one, also involving the interpretation of New York tax law.

In *Parr Meadows, supra,* the secured creditors held valid mortgages on the property, all perfected before the bankruptcy petition was filed. After sale the claims of the secured creditors exceeded the total proceeds of the sale. The county claimed priority, maintaining that all back property taxes should be paid first. The county relied on annual tax liens, which absent bankruptcy, attached to the property each December 1. *Parr Meadows,* 880 F.2d at 1543.

The court of appeals disposed first of the county's assertion that § 362 had not been violated because the tax lien was created by "operation of law" and not by any "affirmative act." The court rejected that argument, enumerating the specific acts required to establish a lien. The court stated: "Thus, the tax liens here did not come passively into being 'by operation of law'; rather, they were created and perfected as a direct result of the county's assessment and taxation process, which consists of several 'affirmative acts' by county, town, and school district officers." *Id.* at 1545 (citing *In re Guterl,* 95 B.R. 370, 373–75 (Bankr. W.D.Pa.1989)).

The court then addressed in turn the same exceptions to § 362 raised by Lockport and Niagara here, that is, §§ 362(b)(3) and 546(b). The court stated that "statutory exceptions to the automatic stay are to be interpreted narrowly and in accordance with its underlying rationale." *Parr Meadows,* 880 F.2d at 1547.

Under § 362(b)(3), in *Parr Meadows*, the secured creditors argued that the county had no interest in the property until December 1 when each year's taxes became due and payable. The county contended that its interest in the property for tax purposes was, as *MNB* held, "ever present" so that a new super-priority tax lien arose each December 1. The court of appeals rejected both arguments. *Id.* at 1546. The court identified the "tax status date," in that case June 1, as the first step in the process to levy taxes and the date on which the state's interest in the property arose for purposes of § 362(b)(3). *Id.*

The court of appeals next addressed "applicable law" under § 546(b), stating that the provision "was enacted to aid the creditor who, 'surprise[d] [by the] intervention of [the] bankruptcy petition', is prohibited by the automatic stay from perfecting its interest in the debtor's property, but who otherwise would still be permitted to perfect that interest under state law." *Id.* at 1547 (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 371, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6327).

The court of appeals determined that § 546(b) was designed to provide a one-time exception for a creditor who gave value but had not yet perfected a lien before the petition was filed. Other courts have supported this view in the context of mechanic's liens and purchase money security interests. *See In re Parr Meadows*, 92 B.R. at 34 (purchase money security interest); *In re Yobe Elec., Inc.*, 30 B.R. 114, 117 (Bankr.W.D.Pa.1983) (mechanic's lien), *aff'd, In re Yobe Elec., Inc.*, 728 F.2d 207 (3d Cir.1984).

Further, the court recognized that if a state's taxing scheme generally constituted "applicable law" under § 546(b), a taxing body could take advantage of a rotating exception, adding another lien at the "front of the priority line" each tax due date. *Parr Meadows*, 880 F.2d at 1547. *See also In re Parr Meadows*, 92 B.R. at 35 (if Congress had intended to except from the automatic stay government's ability to collect postpetition taxes it would have expressly provided for it). The court rejected

such a broad exception that would permit the county to collect on its claims as if no bankruptcy petition had ever been filed. *Parr Meadows*, 880 F.2d at 1547.

Because in *Parr Meadows*, the county acquired an interest in the property on June 1, 1979, the tax status date, and the petition was not filed until June 12, 1979, the county obtained a lien that was perfected on December 1, 1979, when the taxes were due and payable. As to the claims for the following years, since the county did not have an "interest in property" predating the bankruptcy petition to qualify for the § 546(b) exception, the court concluded that the creation and perfection of these taxes violated the automatic stay. *Id.* at 1548.

The Court of Appeals for the Third Circuit, deciding Pennsylvania law, has found that "the Commonwealth could not create a lien until it made a formal demand for the full amount due upon completion of [a taxpayer's permitted] appeal and then filed the amount of that liability with the prothonotary." *H & H Beverage Distrib. v. Dept. of Revenue of Pennsylvania,* 850 F.2d 165, 169 (3d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988). *H & H Beverage* suggests that a lien is created, not at the beginning of the taxing procedure at the tax status date, but at the end of the taxing scheme after the taxpayer has pursued appeals, neglected or refused to pay, and the amount owing has been docketed by the prothonotary. *Id.*

We observe that lien creation occurs under New York law at the tax status date, *Parr Meadows*, 880 F.2d at 1546, and under Pennsylvania law at the time tax liability has been determined and filed with the prothonotary. *H & H Beverage*, 850 F.2d at 169. Fortunately, we are not called upon to reconcile these cases here. Whatever date the Court of Appeals for the Third Circuit might fix for creation of a lien under New York law, we find that in this case even the earliest acts to create each of the liens were taken after the petition was filed on August 9, 1982.

In its most recent ruling on this issue in *W–P Steel Corp., supra,* the Court of Ap-

peals for the Third Circuit determined that the lien date was July 1, the date on which the West Virginia statute dictated that the "lien shall attach." *W-P Steel Corp.*, 884 F.2d at 84. The court found that the 1987 taxes would have become liens on July 1, 1986, long after the automatic stay took effect in April 1985. Therefore the automatic stay prevented creation of those liens.

In *W-P Steel Corp.*, the company argued that the § 362(b)(3) and the § 546(b) exceptions should apply. The court discussed "applicable law" illustrated by *In re Yobe Elec., Inc.*, 728 F.2d 207 (3d Cir.1984), a case analyzing postpetition perfection of mechanic's liens. The court stated that the mechanic's lien "related back" to before the petition was filed because the lien had been created before the operation of the automatic stay. In contrast, West Virginia law had not created a lien for the 1987 taxes until the lien attached after the petition was filed. *Id.* at 85.

Distinguishing between the mechanic's lien and unattached tax liens in *W-P Steel Corp.*, the court of appeals stated: "We see no basis, ... for protecting interests arising post petition, such as the tax liens involved here." The court of appeals cited the legislative history of the Code, stating that the § 546(b) exception to the automatic stay was "not designed to give the States an opportunity to enact disguised priorities in the form of liens that apply only in bankruptcy cases." *Id.* at 86.

Here, as in *W-P Steel Corp.*, we find that the purported tax liens, the earliest of which was created on September 13, 1982 after the bankruptcy petition was filed on August 9, 1982, not only violate the automatic stay but do not qualify for an exception. We therefore affirm the bankruptcy court's ruling that the liens are null and void.

Because the amount in the escrow account is insufficient to satisfy the $4 million still owing on the EDA secured claim, we are not called upon to decide if, in the alternative, the postpetition taxes are payable as administrative expenses under § 503(b)(1)(B)(i). Also, in light of our deci-

sion, we need not decide if Lockport or Niagara can obtain interest and penalties on the amount of the taxes purportedly owing. Thus, we affirm the bankruptcy court's decision that the total sum held in escrow shall be paid to EDA as assignee of the mortgagee.

An appropriate ORDER affirming the decision of the bankruptcy court will issue.