In re Martha Jo POINTER, Debtor.

Martha Jo POINTER, Plaintiff,

v.

CITY OF FARMERS BRANCH, Carrollton–Farmers Branch Independent School District, Defendants.

Bankruptcy No. 387–36028 RCM–11.
Adv. No. 390–3036.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

April 13, 1990.

David L. Ellerbe, Samuel M. Stricklin, Dallas, Tex., for plaintiff.

James E. Porter, Arlington, Tex., for City of Farmers Branch.

Steven L. Eason, Dallas, Tex., for Carrollton–Farmers Branch ISD.

MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

This case involves the extent, validity, and priority of the tax liens of claimants, City of Farmers Branch ("City") and Carrollton–Farmers Branch Independent School District ("ISD") (collectively, "Defendants" or "Taxing Units") against property of the estate of Martha Jo Pointer ("Plaintiff" or "Pointer"), which property Plaintiff obtained by her foreclosure from the bankruptcy estate of Valwood Village Apartments, Ltd. ("VVAL"). Following are the Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

## Procedural History

1. On January 10, 1990, Plaintiff filed her complaint to determine extent, validity, and priority of liens (the "Complaint") against Defendants.

2. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K). Defendants stipulated that the Court had jurisdiction and that this was a core proceeding. Both Taxing Units filed a claim in the Pointer bankruptcy case.

3. The parties entered into an agreed order pursuant to which the parties agreed that this proceeding would be determined upon the pleadings, stipulated facts, briefs, and oral arguments. The briefing and oral arguments have been completed.

## Additional Stipulated Facts

The parties additionally stipulated to the following:

1. Plaintiff's confirmed modified third amended plan of reorganization as supplemented by the modification of September 15, 1988, provided that this Court retain jurisdiction to consider the matters within this adversary proceeding.

2. From 1963 to 1969, Gerald Pointer built, in sections, an apartment complex in Farmers Branch, Texas ("Valwood Apartments"). In or about 1977, Gerald Pointer sold the Valwood Apartments. As part of the consideration for such sale, Gerald Pointer accepted a promissory note secured by a deed of trust granting Gerald Pointer a lien on the Valwood Apartments.

3. In 1982, Gerald Pointer and his wife, Plaintiff herein, were divorced. As part of the divorce decree, Plaintiff was awarded the promissory note and deed of trust upon the Valwood Apartments. During the early 1980s the Valwood Apartments were transferred to various entities. All transfers of the Valwood Apartments were subject to the Pointers' lien upon such apartments. Plaintiff did not have an interest in any such entity.

4. In 1986, the Valwood Apartments were owned by an entity named VVAL. On April 25, 1986, an involuntary petition under Chapter 7 of Title 11 was filed against VVAL (the "VVAL Petition Date"). VVAL's Chapter 7 bankruptcy case is still pending in the Northern District of Texas, Dallas Division, before another Court, under, case Number 386–31339 HCA–7. Included in the estate of VVAL was the real and personal property of the Valwood Apartments.

5. Pursuant to Texas Property Tax Code § 32.07, personal liability for the payment of ad valorem taxes upon real property in Texas fixes to the owner of such real property on January 1 of such tax year. Pursuant to Texas Property Tax Code § 32.01, tax liens ordinarily attach to real property in Texas on January 1 of each year for the payment of such year's ad valorem taxes.

6. Pointer filed for relief under Chapter 11 of Title 11 of the United States Code on November 16, 1987.

7. On February 2, 1988, Pointer, acting as debtor-in-possession, filed a motion for relief from the stay in the VVAL bankruptcy case, seeking an order modifying the stay to allow Pointer to foreclose her lien upon the Valwood Apartments. On June 9, 1988, the Honorable Harold C. Abramson, the Bankruptcy Judge presiding over the VVAL bankruptcy case, ordered that the automatic stay be lifted to allow Pointer to take any and all actions necessary to enforce her security interest in the Valwood Apartments.

8. On September 6, 1988, Pointer conducted a foreclosure sale of the Valwood Apartments. Pointer was the highest bidder at such sale, and, consequently, purchased the Valwood Apartments via credit bid.

9. Attached hereto are two schedules respectively entitled "Schedule B—City of Farmers Branch" and "Schedule C—Carrollton/Farmers Branch ISD". The schedules set out the amount of base taxes, penalties, interest, and additional penalty for collection costs claimed by the respective Taxing Units as owing upon the Valwood Apartments for the tax years of 1988 and before, as of the following dates: (a) April 1986—the VVAL involuntary petition date; (b) September 1988—Pointer's foreclosure date; and (c) March 1990—the present. The parties stipulate that the amounts in the schedules are correctly stated; however, Pointer does not stipulate that all these amounts are secured by a lien upon Valwood Apartments; Pointer merely stipulates that the Taxing Units have liens upon the Valwood Apartments to secure the payment of 1985 and 1986 base taxes and interest only, without penalties and fees. Whether liens upon the Valwood Apartments secure all other amounts is the subject of the dispute making up this adversary proceeding.

### Issues

The precise issues involved in this case are:

1. whether the automatic stay provisions of § 362 bar the Taxing Units from obtaining tax lien status for 1987 and 1988 taxes (the answer to this issue, in turn, depends on the extent to which the exceptions set forth in 11 U.S.C. §§ 362(b)(3) and 546(b) are applicable to these tax liens), and

2. whether the Taxing Units are entitled to penalties, fees, costs, or other charges on the portions of all unpaid ad valorem taxes that the Court determines to be secured by valid liens.

Debtor's contentions are pictorially set forth on Schedule A attached hereto. For a general discussion of these type issues, see, Schwartz, et al, *Treatment of Post Petition Real Estate Taxes in Bankruptcy*, NORTON BANKRUPTCY LAW ADVISER (Monthly Analysis, March, 1990).

### Method of Real Property Ad Valorem Taxation Under Texas Law

Debtor substantially correctly sets forth the method of real property ad valorem taxation under Texas law. It appears that method was utilized by the Taxing Units in the present case.

The process of real property taxation in Texas is set forth in the Texas Property Tax Code, Tex. Tax Code Ann. §§ 1.01–43.04 (Vernon 1982 & Supp.1990) (the "Tax Code"). The Tax Code applies to the City and the ISD as taxing units. *Id.*, §§ 1.02, 1.04.

Each county has an appraisal district, administered by a chief appraiser, which is responsible for appraising property in the county for each taxing unit that imposes ad valorem taxes on real property in the county. *Id.*, §§ 6.01(a), (b) and 6.05(c) (1982 & Supp.1990). The Dallas Central Appraisal District appraises property in Dallas County for the City and the ISD.

A tax lien, to secure payment of all taxes imposed during a tax year on real property, attaches to the property on January 1 of each tax year (prior to completion of the following steps described), regardless of when the taxes for the year are actually imposed. *Id.*, § 32.01 (Supp.1990). § 32.01 reads as follows:

> On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest *ultimately imposed* for the year on that property, whether or not the taxes are imposed in the year the lien attaches. The lien exists in favor of each taxing unit having power to tax the property. Amended by Acts 1983, 68th Leg., p. 4827, ch. 851, § 22, eff. Aug. 29, 1983. [Emphasis added].

The first step thereafter, in the ad valorem taxation process, occurs on May 15 of

each tax year,[1] when the chief appraiser is required to prepare appraisal records that list all taxable property in the district, and state the appraised value of each such property. *Id.,* § 25.01(a). The appraisal records include the identity of each taxing unit in which the property is taxable, a property description, and the appraised value of real property and improvements thereon. *Id.,* § 25.02(a)(2), (5), (6), and (11).

The chief appraiser is also required, by May 15 or as soon thereafter as practicable, to submit the appraisal records to the appraisal review board[2] for review and for the determination of protests. *Id.,* § 25.22 (1982 & Supp.1990); *see also* §§ 41.01–41.11, 41.41–41.47 (review and protest process) (1982 & Supp.1990). The appraisal review board must complete its review, determine timely protests, and submit a list of its approved changes in the appraisal records to the chief appraiser by July 20 of each tax year. *Id.,* § 41.12 (Supp.1990).

After receiving the corrected appraisal records from the appraisal review board, the chief appraiser is required to submit to the assessor for each taxing unit the portion of the appraisal records that lists the taxable property for such taxing unit. The part of the appraisal records that the chief appraiser certifies and submits to the assessor is the appraisal roll for that unit. *Id.,* § 26.01(a) (Supp.1990); *see also id.,* § 25.24 (1982).

After receiving the appraisal roll, the assessor for each taxing unit determines the total appraised value, the total assessed value, and the total taxable value of all property. *Id.,* § 26.04(a) (Supp.1990). By August 1 of the tax year or as soon thereafter as practicable, the assessor must submit the appraisal roll to each taxing unit's governing body. The appraisal roll shows the total appraised, assessed, and taxable values of all property. *Id.,* § 26.04(b) (Supp.1990).

By September 1 or as soon thereafter as practicable, the governing body of each taxing unit then adopts a tax rate for the current tax year, *id.,* § 26.05(a) (Supp.

1990), and the assessor calculates the tax imposed on each property designated on the appraisal roll. *Id.,* § 26.09(e) (1982).

By October 1 of the tax year, the assessor must prepare and mail a tax bill to the owner of the property identified in the tax roll. *Id.,* § 31.01(a) (1982). The taxes may be paid without penalty on or before February 1 of the year following the year in which the tax was imposed. *Id.,* § 31.02 (1982).

*The Extent To Which The Automatic Stay Presently Bars Any Lien Asserted By The Taxing Units For 1987 and 1988 Taxes*

■ In *In re Guterl Special Steel Corp.,* 111 B.R. 107 (W.D.Pa.1990) (*"Guterl"*), the District Court, in affirming the Bankruptcy Court (opinion reported at 95 B.R. 370 (Bankr.W.D.Pa.1989)), held:

The automatic stay ensures that no creditor receives more than an equitable share of the bankrupt's estate. This equitable treatment requires that all creditors, both public and private, be subject to the automatic stay. *In re Parr Meadows Racing Ass'n., Inc.* (*"Parr Meadows"*), 880 F.2d 1540, 1545 (2d Cir.1989), cert. denied, 58 U.S.L.W. 3468 [—— U.S. ——, 110 S.Ct. 869, 107 L.Ed.2d 953] (1990). Congress used broad language to prohibit 'all entities', 11 U.S.C. § 362(a), including a 'governmental unit', 11 U.S.C. § 101(14), from taking action against a debtor's property during bankruptcy proceedings. *Parr Meadows,* 880 F.2d at 1545.

All actions taken in violation of the stay are void. *In re Eisenberg,* 7 B.R. 683, 686 (Bankr.E.D.N.Y.1980). *See also In re Parr Meadows Racing Ass'n., Inc.* (*"In re Parr Meadows"*), 92 B.R. 30, 32 (E.D.N.Y.1988) (any tax lien claimed by county to attach after filing of Chapter 11 petition void), aff'd in part, rev'd in part, 880 F.2d 1540 (2d Cir.1989), cert. denied, 58 U.S.L.W. 3468 [—— U.S. ——, 110 S.Ct. 869, 107 L.Ed.2d 953] (1990).

The Taxing Units rely on *Maryland National Bank v. Mayor and City Council*

---

1. The tax year is the calendar year. *Id.,* § 1.04(13) (1982).

2. *See id.,* § 6.41 (1982 & Supp.1990).

*of Baltimore,* 723 F.2d 1138 (4th Cir.1983) and its interpretation under the specific Maryland tax statute of an "ever present" interest in the "State's property interest since a time well before . . ." the interest of the creditor. *Id.,* at 1142.

With respect to the Texas ad valorem statutes, this Court finds more persuasive the reasoning of *In re Parr Meadows Racing Ass'n., Inc.* *("Parr Meadows"),* 880 F.2d 1540 (2d Cir.1989), cert. denied —— U.S. ——, 110 S.Ct. 869, 107 L.Ed.2d 953 even though the New York statute involved in such case appears to somewhat reverse the procedures of the Texas statute. *Also see, Equibank N.A. v. Wheeling–Pittsburgh Steel Corp.,* 884 F.2d 80 (3rd Cir.1989) *("Equibank")* and *In re Isley,* 104 B.R. 673 (Bankr.D.N.J.1989).[3]

The extent of the Texas tax liens did not come into effect passively; the extent thereof comes into effect as a result of the County's taxation process which consists of several affirmative acts.

This Court agrees with the *Parr Meadows* court that § 546(b) was designed to provide a one-time exception for a creditor who acquires rights in the property, but had not yet perfected a lien before the petition was filed. Pointer concedes this one-time exception for the Taxing Units by conceding the validity of the Taxing Units' principal and interest claim for 1986 taxes. The automatic stay in the VVAL bankruptcy prevented the 1987 and 1988 tax liens from coming into effect. The Texas Prop-

erty Tax Code provides that the tax liens attach automatically to the property on January 1 of each year to secure such year's ad valorem taxes "ultimately imposed". *Id.* § 32.01. The extent thereof is determined thereafter in accordance with the foregoing procedures. Sections 362(b)(3) and 546(b) do not permit the post petition perfection of such interest for the 1987 and 1988 taxes. Any attempted perfection of liens for 1987 and 1988 taxes by the Taxing Units would violate the stay in the VVAL bankruptcy and is accordingly void unless the stay was lifted. *Equibank, supra; Parr Meadows, supra; Guterl, supra; In re Bellman Farms, Inc.,* 86 B.R. 1016 (Bankr.D.S.D.1988); *Isley, supra.*

The federal Bankruptcy Code provides that the filing of a bankruptcy petition automatically stays the attachment of liens against property of the debtor. 11 U.S.C. § 362(a)(4). Since the two statutes are inconsistent and application of the state statute would frustrate the purpose of the federal statute, application of the state statute to permit validation of the 1987 tax liens is invalid. *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Maryland v. Louisiana,* 451 U.S. 725, 747, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981).

*Did The Tax Liens Become Valid Upon The Lifting Of The Stay By Pointer In The VVAL Bankruptcy Or The Foreclosure By Pointer*

■ The order lifting the stay in the VVAL case was specific and only lifted the

---

**3.** The *Parr Meadows* court, at 1548, discusses *Maryland National Bank:*

> Some no doubt will contend that our holding conflicts with the fourth circuit's determination in *Maryland National Bank.* While facially our analyses may differ, we think a full reading of the record in both cases shows our holdings to be reconcilable even if not congruent. First, both cases depend heavily on state tax law, which differs significantly between New York and Maryland. While the tax act in Maryland gave the fourth circuit significant indication that local government possessed a 'long-standing' interest in the property, *see* 723 F.2d at 1142–43, the tax act at issue here makes absolutely no suggestion that the county's interest accrues any earlier than the tax status date. Second, stripped to its bare holding, *Maryland National* held only

> that a bankruptcy petition filed on October 31, 1979, only two months before the 'date of finality' under local tax law (presumably the date when the assessment roll becomes final), did not render invalid a tax lien perfected some six months later on July 1, 1980, because the local taxing entity had possessed an 'interest in [the] property' before the petition was filed. That is similar to our holding here: The bankruptcy petition, filed on June 12, 1979, nearly two weeks after the tax status date and more than two months before September 1 when the assessment roll becomes 'final', does not render invalid a tax lien perfected months later on December 1, 1979, because the taxing entity possessed an 'interest in [the] property' before the petition was filed.

stay as to Pointer, and not as to the Taxing Units.

Citing *In re Bellman, supra* and *Matter of Reserves Development Corp.*, 821 F.2d 520 (8th Cir.1987) (*"Reserves Development"*), the Taxing Units further and alternatively argue that after Pointer foreclosed on the property, the tax liens for 1987 and 1988 immediately attached pursuant to § 362(c)(1). Section 362(c)(1) reads as follows:

> (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; ...

■ However, in this case, upon foreclosure, the property immediately became property of Pointer's bankruptcy estate and subject to the automatic stay in her case. Thus upon foreclosure, the lien for the 1988 taxes never attached.[4] No lien attached pursuant to § 32.01 of the Texas Tax Code on January 1, 1988 because of the stay in the VVAL bankruptcy. Although the VVAL stay ended pursuant to § 362(c)(1) on September 6, 1988 (the date of the foreclosure by Pointer), no lien attached then because the stay in the Pointer bankruptcy was then in effect. In short, a lien could not attach for the 1988 taxes without violating § 362(a)(4).[5]

Lastly, the Taxing Units cite *Sikes v. Global Marine, Inc.*, 881 F.2d 176 (5th Cir.1989) (*"Sikes"*) for the proposition that the Fifth Circuit has held that acts taken in violation of the automatic stay are voidable and not void; however, an order terminating the stay would be only effective from the date of entry (*id.* at 179) in the absence of a retroactive annulment. *See, Sikes*, at 180 (Johnson, J., dissenting on other grounds) (once action is determined to violate automatic stay, it is "otherwise void" unless the Bankruptcy Court validates it at the behest of the violating party). Accordingly, the *Sikes* decision of the Fifth Circuit neither validates the Taxing Units' liens for 1987 and 1988 nor affects the relief sought by Pointer.

Under our present trial record, there had been no termination of the VVAL stay prior to the foreclosure by Pointer, and the present attempted affixation of the 1987 and 1988 tax liens post-foreclosure is "otherwise void" since the Pointer stay immediately became effective upon foreclosure by Pointer.

If this Court were to retroactively annul the Pointer stay to the date of foreclosure by Pointer, *i.e.* September 6, 1988, then, under § 362(c)(1), *Bellman Farms, supra* at 1020 and *Reserves Development, supra,* the 1987 and 1988 tax liens would immediately attach to the property.

■ Retroactive annulment of the stay is to be exercised sparingly and in "appropriate limited circumstances". *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.1984); *Scrima v. John Devries Agency, Inc.*, 103 B.R. 128 (W.D.Mich.1989).

Neither of the Defendants pled specifically affirmatively for retroactive annulment of the stay in this adversary proceeding or otherwise in the main Pointer case. It is recognized that this is an evolving area of the interpretation of the law with respect to the interplay of ad valorem tax-

---

4. In view of holdings in this case, the Court does not need to decide the possible issue of whether the stay in Pointer's case, prior to her foreclosure, would have prevented imposition of a tax lien on the property. *See, In re Cardinal Industries, Inc.*, 105 B.R. 834, 855 and *In re Westec Corporation*, 460 F.2d 1139 (5th Cir. 1972) holding that lien interests are property of the estate. The *Cardinal Industries* court, *id.*, at 855, distinguishes between lien and ownership interests, and it appears that an ad valorem tax lien is not a tax lien on a lien interest, but on an ownership interest.

5. One possible argument in favor of holding that a lien attached for the 1988 tax is that because there are two bankruptcies (VVAL's and Pointer's), there was a one-time § 546(b) exception for the 1986 taxes in the VVAL bankruptcy and a one-time § 546(b) exception for the 1988 taxes in the Pointer bankruptcy. However, the problem with that argument is that § 546(b) does not apply to the 1988 taxes to begin with. The key to § 546(b) is that there is applicable law that would permit such perfection of an interest. Under the facts of this case, the effect of the law in question (§ 32.01) was stayed by the VVAL bankruptcy, and thus there was no "applicable law". Accordingly, § 546(b) cannot be applied to the 1988 taxes.

es, and § 362(a)(4), (b)(3), and 546(b); however, standing alone, and under the circumstances of this case, such evolution is insufficient justification for retroactive annulment of the stay to the date of foreclosure by Pointer. Any other claim for retroactive annulment of the stay in the VVAL bankruptcy would have to have been addressed to the VVAL Bankruptcy Court.

### The Taxing Units Are Not Entitled To Penalties, Fees, Or Other Charges

11 U.S.C. § 506(a) defines an allowed secured claim as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to set-off under § 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.... 11 U.S.C. § 506(a).

11 U.S.C. § 506(b) entitles over-secured creditors to "reasonable fees, costs, or charges provided for under the agreement under which [the creditor's] claim arose." 11 U.S.C. § 506(b). The Taxing Units' claim for penalties and other noninterest fees arise by operation of law, not under an agreement. *See*, Tex. Tax Code Ann. §§ 33.01, 33.07, 33.48 (Vernon 1982).

▮ The Taxing Units admit that their liens are nonconsensual. To the extent the Taxing Units hold valid liens for unpaid ad valorem taxes, as heretofore stipulated by Plaintiff, such liens do not secure the payment of any penalties, fees, or costs attributable to such taxes. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (*"Ron Pair"*) ('[r]ecovery of fees, costs, and charges'[, however,] is allowed 'only if they are reasonable and provided for in the agreement under which the claim arose.') *Parr Meadows, supra,* at 1549 quoting *Ron Pair, supra,* 109 S.Ct. at 1030. It is recognized that the Supreme Court, in *Ron Pair,* had before it a narrow issue, and therefore, its pronouncements therein on penalties, etc., were dicta. The court stated:

In this case we must decide the narrow statutory issue whether § 506(b) of the Bankruptcy Code of 1978, 11 U.S.C. § 506(b) (1982 ed., Supp. IV), entitles a creditor to receive postpetition interest on a nonconsensual oversecured claim allowed in a bankruptcy proceeding. We conclude that it does, and we therefore reverse the judgment of the Court of Appeals.

*Id.,* 109 S.Ct. at 1028.

Judgement will be entered in accordance with the foregoing opinion.

The tax liens for principal and interest are valid for the 1986 taxes.

All issues raised or addressed in either parties' pleadings or briefs have been addressed in the foregoing opinion.

SCHEDULE A

# TIME LINE OF EVENTS REGARDING SECURED CLAIMS OF TAXING AUTHORITIES AGAINST MARTHA JO POINTER'S PROPERTY

| | 1985 & 1986 | 25-Apr-86 | 01-Jan-87 | 06-Nov-87 | 01-Jan-88 | 01-Feb-88 | 06-Sep-88 |
|---|---|---|---|---|---|---|---|

**Events above the timeline:**

Gerald Pointer Builds Valwood

Gerald Pointer Sells Valwood Apts.

Valwood Apts. owned by Various Parties; Personal Tax Liability Imposed on such Parties None of which is MJP

Valwood Apts. Ultimately owned by Val. Vill.'s Apts., Ltd. MJP not affiliated

Involuntary Cha. 7 Filed Against Val. Vill. Apts., Ltd.

Personal Liability for 1987 Taxes Fix to Val. Vill.'s Estate Sec. 503(b)(1)(B) Claim

MJP Files Cha. 11

Personal Liability for 1988 Taxes Fix to Val. Vill.'s Estate Sec. 503(b)(1)(B) Claim

Order for Relief Val. Vill.

MJP Foreclosure Lien on Valwood Apts. and Buys Valwood Apts. @ the Foreclosure Sale

**Events below the timeline:**

Martha Jo Pointer Receives Note and Lien in Divorce Settlement

Tax Liens Attach to Valwood Apts. on Jan. 1

Section 362(a) Automatic Stay Invoked

NO TAX LIEN ATTACHES STAYED BY 362(a)

NO TAX LIEN ATTACHES STAYED BY 362(a)

MJP BUYS SUBJECT TO VALIDLY ATTACHED & PERFECTED 1985 & 1986 TAX LIENS ONLY

# SCHEDULE B—CITY OF FARMER'S BRANCH

| 1985 | | AS OF APRIL 1986 | | | AS OF SEPT. 1988 | | | AS OF MAR. 1990 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Account Number | Base Taxes | Interest | Penalty | Add'l Plty | Interest | Penalty | Add'l Plty | Interest | Penalty | Add'l Plty |
| 20750010010000 | 2,364.20 | 70.93 | 189.13 | 393.64 | 756.54 | 283.70 | 510.67 | 1,182.10 | 283.70 | 574.50 |
| 20850020010000 | 4,728.28 | 141.85 | 378.26 | 787.26 | 1,513.05 | 567.39 | 1,021.31 | 2,364.14 | 567.39 | 1,148.97 |
| 20950010020000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 21050010030000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 21150010040000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 21250010050000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 86233000030500 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL | 7,092.48 | 212.77 | 567.39 | 1,180.90 | 2,269.59 | 851.10 | 1,531.98 | 3,546.24 | 851.10 | 1,723.47 |

| 1986 | | | AS OF SEPT. 1988 | | | AS OF MAR. 1990 | | |
|---|---|---|---|---|---|---|---|---|
| Account Number | Base Taxes | N/A | Interest | Penalty | Add'l Plty | Interest | Penalty | Add'l Plty |
| 20750010010000 | 2,364.20 | | 472.84 | 283.70 | 468.11 | 898.40 | 283.70 | 531.95 |
| 20850020010000 | 4,728.28 | | 945.66 | 567.39 | 936.20 | 1,796.75 | 567.39 | 1,063.86 |
| 20950010020000 | 2,955.24 | | 591.05 | 354.63 | 585.14 | 1,122.99 | 354.63 | 664.93 |
| 21050010030000 | 2,364.20 | | 472.84 | 283.70 | 468.11 | 898.40 | 283.70 | 531.95 |
| 21150010040000 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 21250010050000 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 86233000030500 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL | 12,411.92 | | 2,482.38 | 1,489.43 | 2,457.56 | 4,716.53 | 1,489.43 | 2,792.68 |

**1987**

| Account Number | Base Taxes | | AS OF SEPT. 1988 | | | AS OF MAR. 1990 | | |
|---|---|---|---|---|---|---|---|---|
| | | | Interest | Penalty | Add'l Plty | Interest | Penalty | Add'l Plty |
| 20750001010000 | 1,967.40 | N/A | 157.39 | 236.09 | 354.13 | 511.52 | 236.09 | 407.25 |
| 20850002010000 | 3,934.76 | | 314.78 | 472.17 | 708.26 | 1,023.04 | 472.17 | 814.50 |
| 20950001020000 | 2,459.54 | | 196.76 | 295.14 | 442.72 | 639.48 | 295.14 | 509.12 |
| 21050001030000 | 1,967.40 | | 157.39 | 236.09 | 354.13 | 511.52 | 236.09 | 407.25 |
| 21150001040000 | 3,934.76 | | 314.78 | 472.17 | 708.26 | 1,023.04 | 472.17 | 814.50 |
| 21250001050000 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 472.17 | 70.83 |
| 86233000030500 | 161.60 | | 12.93 | 19.39 | 29.09 | 42.02 | 19.39 | 33.45 |
| TOTAL | 10,329.10 | | 826.33 | 1,239.49 | 1,859.24 | 2,685.57 | 1,239.49 | 2,138.12 |

**1988**

| Account Number | Base Taxes | | | AS OF MAR. 1990 | | |
|---|---|---|---|---|---|---|
| | | | | Interest | Penalty | Add'l Plty |
| 20750001010000 | 1,155.80 | N/A | N/A | 161.81 | 138.70 | 218.45 |
| 20850002010000 | 2,308.00 | | | 323.12 | 276.96 | 436.21 |
| 20950001020000 | 1,443.12 | | | 202.04 | 173.17 | 272.75 |
| 21050001030000 | 1,155.56 | | | 161.78 | 138.67 | 218.40 |
| 21150001040000 | 2,310.28 | | | 323.44 | 277.23 | 436.64 |
| 21250001050000 | 4,244.32 | | | 594.20 | 509.32 | 802.18 |
| 86233000030500 | 161.60 | | | 22.62 | 19.39 | 30.54 |
| TOTAL | 6,062.48 | | | 848.75 | 727.50 | 1,145.81 |

SCHEDULE B--CITY OF FARMERS BRANCH  Page 2

# SCHEDULE C—CARROLLTON/FARMERS BRANCH ISD

| 1985 Account Number | Base Taxes | AS OF APRIL 1986 | | | AS OF SEPT. 1988 | | | AS OF MAR. 1990 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Interest | Penalty | Add'l Plty | Interest | Penalty | Add'l Plty | Interest | Penalty | Add'l Plty |
| 242075000010010000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 242085000020010000 | 8,026.26 | 240.79 | 481.58 | 1,312.29 | 2,568.40 | 963.15 | 1,733.67 | 4,013.13 | 963.15 | 1,950.38 |
| 242095000010020000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 242105000010030000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 242115000010040000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 242125000010050000 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 998623300000030500 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL | 8,026.26 | 240.79 | 481.58 | 1,312.29 | 2,568.40 | 963.15 | 1,733.67 | 4,013.13 | 963.15 | 1,950.38 |

*(Handwritten annotation on row 2 April 1986 Penalty: "642.10 481.58")*

| 1986 Account Number | Base Taxes | APRIL 1986 | AS OF SEPT. 1988 | | | AS OF MAR. 1990 | | |
|---|---|---|---|---|---|---|---|---|
| | | | Interest | Penalty | Add'l Plty | Interest | Penalty | Add'l Plty |
| 242075000010010000 | 4,841.29 | N/A | 968.26 | 580.95 | 958.58 | 1,839.69 | 580.95 | 1,089.29 |
| 242085000020010000 | 9,682.34 | | 1,936.47 | 1,161.88 | 1,917.10 | 3,679.29 | 1,161.88 | 2,178.53 |
| 242095000010020000 | 6,051.59 | | 1,210.32 | 726.19 | 1,198.21 | 2,299.60 | 726.19 | 1,361.61 |
| 242105000010030000 | 4,841.29 | | 968.26 | 580.95 | 958.58 | 1,839.69 | 580.95 | 1,089.29 |
| 242115000010040000 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 242125000010050000 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 998623300000030500 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| TOTAL | 20,838.36 | | 5,083.30 | 3,049.98 | 5,032.47 | 9,658.27 | 3,049.98 | 5,718.71 |

**1987**

| Account Number | Base Taxes | | AS OF SEPT. 1988 | | | AS OF MAR. 1990 | | |
|---|---|---|---|---|---|---|---|---|
| | | | Interest | Penalty | Add'l Plty | Interest | Penalty | Add'l Plty |
| 24207500010010000 | 3,969.23 | N/A | 317.54 | 476.31 | 714.46 | 1,032.00 | 476.31 | 821.63 |
| 24208500020010000 | 7,938.38 | | 635.07 | 952.61 | 1,428.91 | 2,063.98 | 952.61 | 1,643.24 |
| 24209500010020000 | 4,961.52 | | 396.92 | 595.38 | 893.07 | 1,290.00 | 595.38 | 1,027.03 |
| 24210500010030000 | 3,969.23 | | 317.54 | 476.31 | 714.46 | 1,032.00 | 476.31 | 821.63 |
| 24211500010040000 | 7,938.38 | | 635.07 | 952.61 | 1,428.91 | 2,063.98 | 952.61 | 1,643.24 |
| 24212500010050000 | 9,922.95 | | 793.84 | 1,190.75 | 1,786.13 | 2,579.97 | 1,190.75 | 2,054.05 |
| 99862330000030500 | 326.03 | | 26.08 | 39.12 | 58.69 | 84.77 | 39.12 | 67.49 |
| TOTAL | 25,416.51 | | 1,667.07 | 2,500.60 | 3,750.90 | 5,417.97 | 2,500.60 | 4,313.54 |

**1988**

| Account Number | Base Taxes | | AS OF SEPT. 1988 | | | AS OF MAR. 1990 | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Interest | Penalty | Add'l Plty |
| 24207500010010000 | 2,447.41 | N/A | N/A | | | 342.64 | 293.69 | 462.56 |
| 24208500020010000 | 4,887.19 | | | | | 684.21 | 586.46 | 923.68 |
| 24209500010020000 | 3,055.81 | | | | | 427.81 | 366.70 | 577.55 |
| 24210500010030000 | 2,446.90 | | | | | 342.57 | 293.63 | 462.46 |
| 24211500010040000 | 4,892.02 | | | | | 684.88 | 587.04 | 924.59 |
| 24212500010050000 | 8,987.35 | | | | | 1,258.23 | 1,078.48 | 1,698.61 |
| 99862330000030500 | 342.19 | | | | | 47.91 | 41.06 | 64.67 |
| TOTAL | 12,837.31 | | | | | 1,797.22 | 1,540.48 | 2,426.25 |

SCHEDULE C--CARROLLTON/FARMERS BRANCH ISD   Page 2