In re Will THURMAN, Jr., Debtor.

Marsha G. KOCUREK, Trustee, Plaintiff,

v.

L.E. ARNOLD, M.D.; Mary Gail Arnold; Austin Community College, Austin Independent School District; County Education District; Travis County, Texas; Travis County Area Fire District #6; and Dolly Ware, Defendants.

Bankruptcy No. 86–10598–LK.
Adv. No. 93–12621lk.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Jan. 6, 1994.

C. Daniel Roberts, Austin, TX, for trustee.

Conde Cox, Austin, TX, for defendant Dolly Ware.

Ronald Ingalls, Austin, TX, for defendants L.E. Arnold and Mary Gail Arnold.

John McCormick, Austin, TX, for defendants Travis Co. Area Fire Dist. # 6, County Educ. Dist., AISD, ACC and Travis County.

## MEMORANDUM OPINION

LARRY E. KELLY, Chief Judge.

Before the court is a motion for partial summary judgment filed by Marsha Kocu-

rek, Trustee, and a cross-motion for summary judgment filed by certain of the above-named defendants, hereafter collectively referred to as "Tax Claimants". The specific relief sought in this adversary is a request by the Trustee to authorize the estate to sell its 55% undivided interest in certain real estate free and clear of liens to a purchaser for $185,000.00 to subordinate, in whole or in part, the liens of the Tax Claimants or to find that the perfection of the Tax Claimants' lien violated the automatic stay and is therefore invalid and does not attach to the proceeds to be realized from the sale. Ms. Dolly Ware, one of the named defendants, is the only holder of a lien on this property and she has consented to the sale on the terms as requested. Dr. L.E. Arnold, M.D. and Mary Gail Arnold, are named as defendants because they are co-owners and hold a 45% undivided interest in the subject real property. They also have consented to the sale on the terms requested by the Trustee. All of the other named Defendants hereinabove are Tax Claimants.

### BACKGROUND

1. This bankruptcy case was commenced by the filing of a voluntary petition in Chapter 11 by Will Thurman, Jr. ("Debtor") on July 1, 1986. Mr. Thurman had been a developer of real estate and had substantial holdings at the time of the filing of his petition.

2. The Chapter 11 proceeding was converted to Chapter 7 on April 17, 1991, and Ms. Kocurek appointed Trustee at that time. This case has not previously been dismissed or closed.

3. This adversary proceeding was commenced on August 26, 1993, and the original complaint amended on September 17, 1993.

4. Timely answers have been filed on behalf of all the Defendant Tax Claimants.

5. At all times relevant to this case, the property made the subject of this adversary proceeding was owned by the Debtor and/or his bankruptcy estate in undivided interests with L.E. Arnold, M.D. and wife, Mary Gail Arnold.

6. The complaint, as amended, seeks to sell the Debtor's undivided interest as well as the undivided interest of the Arnolds free and clear of liens to Jimmy Nassour, Trustee for $185,000.00 cash. All liens would attach to the proceeds with the same priority and validity that they are now attached to the subject property. The Trustee relies on § 363(f) and (h) to accomplish the sale.[1]

7. Ms. Dolly Ware holds a recorded deed of trust lien on the subject property and has agreed to the sale on the terms proposed by the Trustee. Her counsel represented on the record at the hearing on the motions for partial summary judgment that to the extent necessary to accomplish the sale, she would reduce her secured claim accordingly.

8. The Tax Claimants originally opposed the sale, but have now entered into an agreed order, separately submitted and approved by the court, authorizing the sale.

9. The Trustee filed her motion for partial summary judgment on October 8, 1993, seeking a court determination of whether or not the automatic stay provisions of § 362(a)(4)[2] preclude any or all of the ad valorem property tax liens of the Tax Claimants from attaching to the subject property.

10. The Tax Claimants timely filed responses to the Trustee's motion for partial summary judgment and interposed their own cross-motion for partial summary judgment as to the same issue. In relevant part, the Tax Claimants have asserted that the actions complained of do not violate the automatic stay, that § 362(b)(3) and § 546(b) provide an exception to the automatic stay, and alternatively, that the statute of limitations under § 549(d) bars the Trustee's action in the main.

11. The Tax Claimants filed a proof of claim in this case for the tax years 1986 through 1992. All parties stipulated on the

---

1. All references to sections will be references to 11 U.S.C., unless otherwise specifically noted.

2. Section 362(a)(4) provides:

"Except as provided in subsection (b) of this section, a petition ... operates as a stay, applicable to all entities of (4) any act to create, perfect, or enforce any lien against property of the estate."

record that the estate's tax debt for these years has not been paid in whole or in part by either the bankruptcy estate or by the Arnolds. For informational purposes, the court was informed that the approximate tax debt on the subject property, by year, was as follows:

| 1986 | $36,000.00 |
|------|-----------|
| 1987 | 31,800.00 |
| 1988 | 32,000.00 |
| 1989 | 27,000.00 |
| 1990 | 26,000.00 |
| 1991 | 17,000.00 |
| 1992 | 312.00 |

The apparent discrepancy for 1992 was explained by the Arnolds claiming an agricultural exemption beginning that year. The exact calculation of the tax debt and the determination of any other defenses as offsets which may relate to the claimed amount of principal, interest or penalty or to the classification of the ad valorem taxes was not before the court in either motion for partial summary judgment.

## STATEMENT OF THE ISSUES

The issues presented in both motions for partial summary judgment are (1) whether or not the automatic stay provisions of § 362(a) bar the Tax Claimants from obtaining perfected lien status for 1986 and subsequent tax years on the subject property; and (2) whether the subordination provision in § 724(b) applies to the sale of this real property.

## DISCUSSION

All of the parties agree that the starting point for discussion is the Bankruptcy Court opinion, *Matter of Pointer*, 113 B.R. 285 (Bankr.N.D.Tex.1990), affirmed in part and reversed and remanded in part by the Fifth Circuit, 952 F.2d 82 (5th Cir.1992).[3] Gener-

ally the Bankruptcy Court opinion in *Pointer* concluded that the application of the various provisions of the Texas Tax Code permitting validation of tax liens which attach post-petition violate the automatic stay. It opined, therefore, that the post-petition tax liens were unperfected.

This court agrees generally with the analysis of the method of real estate ad valorem taxation under Texas law as set forth in *Pointer*, 113 B.R. at pp. 287–288. *Pointer* recognized the principal that the automatic stay insures that creditors should receive only an equitable share of the bankrupt's estate, citing *In re Guterl Special Steel Corp.*, 111 B.R. 107 (W.D.Penn.1990) ("The automatic stay insures that no creditor receives more than an equitable share of the bankrupt's estate. This equitable treatment required all creditors, both public and private, be subject to the automatic stay." citing *In re Parr Meadows Racing Ass'n, Inc.*, 880 F.2d 1540, 1545 (2nd Cir.1989), *cert. denied*, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990). *Guterl* went on to state that all actions taken in violation of the automatic stay are void. *Pointer* recognizes *Sikes v. Global Marine, Inc.*, 881 F.2d 176 (5th Cir.1989) for the proposition that the Fifth Circuit has held that acts taken in violation of the automatic stay are voidable, not void. However, the *Pointer* court felt that since orders terminating the automatic stay are effective only from the date of entry, in the absence of a retroactive annulment, once an action is determined to violate the automatic stay it is "void" unless the bankruptcy court validates it as to the violating party. *Pointer*, 113 B.R. at p. 290.

*Pointer* also addressed the exception to the automatic stay provisions relating to perfection of liens on estate property found at § 362(b)(3)[4] and § 546(b).[5] It determined

---

**3.** All references to *Pointer* will be to the bankruptcy trial court opinion, unless otherwise specifically noted.

**4.** § 362(b)(3) reads in pertinent part:

"(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is

accomplished within the period provided under section 547(e)(2)(A) of this title;"

**5.** § 546(b) reads in pertinent part:

"(b) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of

that "... § 546(b) was designed to provide a *one-time exception* for a creditor who acquires rights in the property, but who has not yet perfected a lien before the petition was filed." *Pointer* at p. 289 (emphasis added).

This court respectfully disagrees with both positions taken in *Pointer*. It also concludes that the post-petition transfer of a perfected security interest, even if it were to violate the provisions of the automatic stay, would nevertheless have transferred a perfected security interest. Having occurred post-petition, and being voidable and not void, the Trustee would necessarily need to invoke an avoidance power such as § 549 to avoid the transfer. Such avoidance actions would be subject to the statute of limitations found in § 549(d).

This court, however, finds that the post-petition perfection of a valid ad valorem tax lien on estate property does not violate the provisions of the automatic stay. To reach this conclusion, a number of related statutory provisions must be read together. Those provisions include the following:

(1) 28 U.S.C. § 959(b):

(b) Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

(2) 28 U.S.C. § 960:

Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation.

(3) V.T.C.A.—Tax Code § 32.01

On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on that property, whether or not the taxes are imposed in the year the lien attaches. The lien exists in favor of each taxing unit having power to tax the property.

(4) V.T.C.A.—Tax Code § 32.07

(a) Except as provided by Subsection (b) of this section, property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed. A person is not relieved of the obligation because he no longer owns the property.

(b) The person in whose name a property is required to be listed by Section 25.13 or 25.15 of this code is personally liable for the taxes imposed on the property.

(5) 11 U.S.C. § 362(b)(3)

(b) The filing of a petition ... does not operate as a stay—

(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title ...

(6) 11 U.S.C. § 546(b)

(b) The rights and powers of a trustee under section 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

(7) 11 U.S.C. § 549(a) and (d)

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing

of the petition, such interest in such property shall be perfected by notice within the time fixed by such law fore such seizure or commencement.

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

(d) An action or proceeding under this section may not be commenced after the earlier of—

(1) two years after the date of the transfer sought to be avoided; or

(2) the time the case is closed or dismissed.

(8) 11 U.S.C. § 503(b)(1)(B) and (C):

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)( & ) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph;

(9) 11 U.S.C. 363(b):

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

When read together, it appears to this court that the trustee uses the real property of the estate subject to applicable state law. One such applicable law would be the Texas Property Tax Code which automatically attaches a tax lien to property to secure the payment of all taxes, penalties and interest imposed for the year on that property. V.T.C.A. Tax Code § 32.01. Section 363(b) only requires a trustee to obtain court approval to use property of the estate if it is "not" in the ordinary course of business. Therefore, payment of ordinary course of business expenses can be made from money of the estate without court approval. 28

U.S.C. § 959(b) and 28 U.S.C. § 960 would appear to this court to make the ad valorem tax claim one which the estate is subject to. As such, payment of the ad valorem tax liability from money of the estate would be, in this court's view, payment in the ordinary course of business. As a payment being made in the ordinary course of business, although it is a post-petition transfer from property of the estate, it would not be avoidable under § 549(a) because it is an action authorized by the Bankruptcy Code.

Further, ad valorem taxes are not one of the taxes described in § 507(a)(7); therefore, they are eligible for allowance as an administrative claim against the estate via via § 503(b)(1)(B), and such claim could include penalty and interest under § 503(b)(1)(C). See generally, *In re Flo–Lizer, Inc.*, 916 F.2d 363 (6th Cir.1990); *United States v. Ledlin, (In re Mark Anthony Construction)*, 886 F.2d 1101 (9th Cir.1989); *In re Friendship College, Inc.*, 737 F.2d 430 (4th Cir.1984); and *United States v. Cranshaw (In re Allied Mechanical Services, Inc.)*, 885 F.2d 837 (11th Cir.1989). A failure to pay the ad valorem tax liability on a timely basis could unduly diminish the bankruptcy estate by the amount of penalty and interest which accrues and could result in "cause" sufficient to allow for conversion or dismissal of the bankruptcy case under § 1112(b)(1) and (3) ("Continuing loss diminution of the estate" and "unnecessary delay ... prejudicial to creditors") or § 707(a)(1) ("Unreasonable delay ... prejudicial to creditors").

■ This court disagrees with *Parr Meadows* and *Pointer* when they conclude that § 546(b) provides only a "one-time exception" for a creditor to perfect a lien. *Pointer* 113 B.R. at 289; *Parr Meadows,* 880 F.2d at 1547. This court does agree with *Parr Meadows* and *Pointer* when they conclude that § 546(b) provides an exception for a creditor who acquires rights in property of the estate, but has not yet perfected a lien before the lien was ever filed for the year in which the bankruptcy petition is filed. However, it disagrees that the exception does not continue post-petition for ad valorem creditors who continue to accrue post-petition lia-

bilities, which the estate is obligated to pay as an ordinary-course-of-business expense, for which the estate is liable as an administrative expense, and for which the trustee is authorized and obligated to pay and may perhaps even be exposed to personal liability for nonpayment.[6]  Section 364 of the Bankruptcy Code does not appear to conflict with this analysis.  The trustee is not "obtaining credit."  The trustee is merely using property which a governmental entity has subjected to a tax.  28 U.S.C. §§ 959 and 960 subject the trustee and the property of the estate to such tax obligations, all without any need for court approval.

This court is convinced that § 362(b)(3) and § 546(b) provide an exception, which occurs annually as the post-petition tax liability is incurred and as the tax lien is automatically perfected to secure the liability.  To argue that § 546(b) is a one-time exception for pre-petition liabilities only completely ignores the fact that post-petition liabilities are regularly incurred and that certain of those post-petition liabilities, reflected in 28 U.S.C. §§ 959 and 960, are obligations which the trustee would appear to be obligated to pay and which payments would appear to be in the ordinary course of business.

■  All of the above analysis assumes, as did *Pointer*, that the Texas tax liens do not come into effect passively, but "the extent thereof comes into effect as a result of the (taxing authority's) taxation process which consists of several affirmative acts."  *Pointer* at 289.  As a practical matter it is difficult to see how the various Texas ad valorem taxing authorities could ever avoid violating the automatic stay under this approach.  The Tex-

as Legislature adopted the predecessor to § 32.01 of the Property Tax Code in 1876.  The lien is perfected automatically on January 1 by the statute with no "act" being necessary.  An alternative argument that the provisions of § 362(a)(4) do not apply in this case is to find that "no act to perfect a lien" occurred on the part of the Tax Claimants.  The certification of tax roles, establishment of tax rates, and sending out of tax notices do not "create, perfect, or enforce" a lien within the meaning of § 362(a)(4).  A lien is not "enforced" by setting tax rates or establishing values, it is enforced by affirmative action such as filing lawsuits, foreclosing, and filing a notice of lis pendens.  This type of enforcement action would clearly be stayed by § 362(a)(4).  But tax authorities do not appear to be stayed under § 362(a)(4) from certifying tax roles or setting tax rates on property even if such property is in a bankruptcy estate.  This very fact appears to have been recognized by the Fifth Circuit *Pointer* opinion, 952 F.2d at 83, footnote 2.[7]  As a recent bankruptcy seminar article stated, "In other words, the acts necessary to determine the *amount* of taxes are not the acts to 'create, perfect, or enforce the lien' ".[8]

■  The second issue raised by the competing motions for partial summary judgment was whether the Trustee could invoke the subordination provisions of § 724(b).  That section provides in relevant part:

(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or pro-

---

6.  Bankruptcy trustees generally have immunity from personal liability, but such immunity is not absolute.  It applies only to acts within the scope of their authority.  *Yadkin Valley Bank & Trust Co. v. McGee*, 819 F.2d 74 (4th Cir.1987).  When trustees fail to comply with court orders they generally lose their immunity and may be held personally liable for resulting damages.  *Connecticut General Life Ins. Co. v. Universal Insurance Co.*, 838 F.2d 612, 621–22 (1st Cir.1988).  A trustee who violates 28 U.S.C. § 959 and 960 could be found to have failed to collect applicable taxes or to pay state taxes which are collectible.  V.T.C.A. Tax Code § 32.07 creates personal liability on the person who "owns or acquires the property on January 1 of the year for which the tax is imposed.  It is arguable that the estate

trustees may have personal liability for unpaid taxes, at least where available funds were not used for that purpose.

7.  The circuit courts that have thus far addressed the issue have not cited 28 U.S.C. §§ 959 and 960 or made any attempt to harmonize those statutes with §§ 362, 364 and 546 of the Bankruptcy Code.

8.  "State and Local Tax Issues Affecting Business Bankruptcy Cases", Mark Browning, Office of the Attorney General, State Bar of Texas Advanced Business Bankruptcy Course, Houston, Texas, May 6–8, 1993, p. D–19.

ceeds of such property, shall be distributed—

> (1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
>
> (2) second, to any holder of a claim of a kind specified in sections 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), 508(a)(6) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;
>
> (3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

The Tax Claimants argue that there is no benefit to the estate from this sale because the gross sales price to be paid for the subject property does not exceed all of the lien debt. However, they have separately agreed to the sale and are not urging that it be disapproved.

This issue is somewhat premature as there is not yet a specific request to distribute any of the anticipated proceeds which would require that the lien claim be subordinated, in whole or in part. See *In re Dowco Petroleum, Inc.*, 137 B.R. 207, (Bankr.E.D., Tex. 1992).

The subordination provisions do appear to apply to real property sales as well as personal property sales. See, *In re K.C. Machine & Tool Co.*, 816 F.2d 238 (6th Cir.1987). There is, however, some doubt as to whether the Tax Claimants' portion of the sales proceeds can be used to pay any administrative claim, or whether the administrative claimants should somehow be required to look to other estate property before looking to the proceeds subject to a properly perfected tax lien. See, e.g., *In re Dowco Petroleum, Inc.*, supra, 137 B.R. at 210 ("Chapter 7 Trustee is required to exhaust all unencumbered funds of estate in payment of administrative expenses before resorting to priming option of taxing administrative expenses against proceeds encumbering tax lien."). Contra, *In re Packard Properties, Ltd.*, 112 B.R. 154, 156 (Bankr.N.D., Tex.1990) ("Section 724(b) designates a tax lien as a source of payment of administrative claims. Thus, whenever property of the estate is burdened with a tax lien (local, state, or federal) the amount of that lien can be used to pay administrative expenses ... Section 724 just substitutes the administrative claimant in the place of the tax claimant to the extent of their claim [cites omitted]. The effect of section 724(b) is to take the tax claimant's lien and give it to the administrative claimants.") See also *In re Darnell*, 834 F.2d 1263, 1265 (6th Cir.1987) (stating that the Section 724(b) sets forth an exception to the general rule that priority claimant's do not affect perfected secured claims and essentially noting that the effect is to allow the administrative claimants to step into the shoes of the tax collector, at least to the extent of the perfected lien claim.)

This court concludes that the Trustee's motion should be granted to the extent that it is now relevant. That is, this court does find that the Tax Claimants' liens are subject to subordination under Section 724(b). However, the issues of how much of the claim should be subordinated and for which administrative claims they should be subordinated is not yet before the court. No distributions for administrative claims have been requested from these proceeds and will not be allowed until a proper motion is made and until a separate order of the court is acquired. The Tax Claimants may appear at that time to dispute the amount by which their claims are to be subordinated.

### CONCLUSIONS OF LAW

1. This is a core matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(B) and (K).

2. 28 U.S.C. §§ 959 and 960, 11 U.S.C. §§ 362(b)(3) and 546(b) provide an annual exception to the automatic stay in favor of the attachment of post-petition ad valorem tax liens.

3. Alternatively, the "acts" complained of do not violate the automatic stay. First, the lien attaches automatically by law, which is allowed by 28 U.S.C. §§ 959 and 960. Second, the establishment of tax rolls and the setting of tax rates are not prohibited by any part of § 362(a)(4).

■ 4. Further, in the alternative if necessary, this court finds that the post-petition attachment of the tax liens is a transfer of a security interest. If such attachment is determined to violate the automatic stay, it is nevertheless effective until voided. This court's interpretation of *Sikes,* supra, is that such actions are voidable, not void. As with any other post-petition transfer, § 549 would require in this case that an avoidance action be commenced by the Trustee within two years from the date of the transfer sought to be avoided as this case has not previously been closed or dismissed. The attachment date is effective on January 1 of each year for such ad valorem tax liens and therefore the post-petition ad valorem liens for the tax years 1986, 1987, 1988, 1989, 1990, and 1991 occurred more than two years prior to August 26, 1993, which is when this adversary proceeding was commenced and therefore any avoidance action by this Trustee would be barred by the statute of limitations provision of § 549(d).

5. Section 724(b) affords the Trustee the right to subordinate the Tax Claimants' liens in favor of payment of administrative claims.

## CONCLUSIONS

For all of the reasons stated herein, this court concludes that the ad valorem tax liens at issue were properly perfected post-petition against the subject property and may not be avoided. By separate order of even date herewith, this court will effectuate its Findings of Fact and Conclusions of Law.

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR PARTIAL SUMMARY JUDGMENT

On the 22nd day of November, 1993, came on to be considered by this court cross-motions for partial summary judgment in the above-styled and numbered Adversary proceeding. By separate document of even date herewith, this court has entered its Findings of Fact and Conclusions of Law which are incorporated herein for all purposes. This is a core proceeding within the meaning of 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(B) and (K).

Based upon such Findings of Fact and Conclusions of Law, the court has determined that the Motion For Partial Summary Judgment filed by the Trustee, seeking to determine that the liens of the Tax Claimants are not perfected as having violated the provisions of 11 U.S.C. § 362(a) should be denied;

To the extent the Trustee's motion seeks a determination that the provisions of § 724(b) apply and that the Tax Claimants liens may be subordinated for payment of approved administrative claims, it should be granted;

The motion of the Tax Claimants as it relates to the validity of their post-petition tax liens securing tax liabilities of this estate since 1986 should be granted;

IT IS THEREFORE ORDERED that for the reasons contained in this court's Memorandum Opinion of even date herewith, the Trustee's Motion For Partial Summary Judgment is DENIED on all issues challenging the perfection of the Tax Claimants' post-petition tax liens;

IT IS ALSO ORDERED that the Trustee's Motion is granted to the extent it seeks a determination that 11 U.S.C. § 724(b) allows the tax liens of these Tax Claimants to be subordinated to the payment of allowed administrative claims;

IT IS FURTHER ORDERED that the Tax Claimants' Cross Motion for Partial Summary Judgment is GRANTED to the extent it sought a ruling that the post-petition tax liens are properly perfected and not subject to any avoidance action of the Trustee; and

IT IS FURTHER ORDERED that no distributions shall be made from the proceeds of this sale, except as specifically authorized in the separate order approving the sale, or upon proper motion being filed and a separate order authorizing distributions being received from this court. The right of the Tax Claimants to dispute the amount of funds to be taken from their lien proceeds is reserved, although the right of the Trustee to subordinate their lien to take such funds as may be approved, is determined in favor of the Trustee by this order.

Any other relief not specifically granted herein is denied without prejudice.